## 17184

ALICE COX and ONAH COX, Respondents, v. VERNON TANNER, Appellant

(93 S. E. (2d) 905)

*Messrs. Lyles & Lyles,* of Spartanburg, *for Appellant,*

*T. E. Walsh, Esq.,* of Spartanburg, *for Respondents,*

July 11, 1956.

*Per Curiam.*

The order of the Circuit Court meets with the approval of this Court with the exception of the paragraph commencing at folio 431, page 108, and ending at folio 434, page 109, of the printed Transcript. With this exception, it is adopted as the order of this Court with the provision that the defendant, Vernon Tanner, file with the Master of Spartanburg County within twenty-one days after the filing of this opinion, a written account of the rents and other profits received by him from the "West View Property" to-

gether with such expenses incurred in connection with said property during the period of time from the death of Dr. Tanner, February 13, 1952, to the date of filing.

Bruce Littlejohn, Acting Associate Justice, disqualified.

ORDER OF JUDGE LITTLEJOHN

This is an action instituted by the plaintiffs, Alice Cox and Onah Cox, against the defendant Vernon Tanner. In the first cause of action plaintiffs ask the Court to declare that they own a one-half undivided interest in a certain tract of land near West View and which will hereafter be referred to as the "West View Property." In the second cause of action plaintiffs ask for a partition of this property as well as of another tract of land owned by the plaintiffs and the defendant as tenants in common. In addition thereto, plaintiffs ask for an accounting of rents and profits from the "West End Property."

This case was referred to the Honorable LeRoy Moore, Master for Spartanburg County, by Order of Reference dated November 21, 1953. Pursuant to the Order of Reference the Master took testimony on several occasions and has made his report, dated May 4, 1955, in which he found that the defendant, Vernon Tanner, was the owner in fee simple of the "West View Property" and other findings as will appear more fully by reference to the original report.

The plaintiffs appealed from said report and have cited twenty-seven reasons or exceptions why this Court should reverse the Master. Without enumerating said exceptions in detail, suffice it to say that the central point of issue in the entire case is whether or not the plaintiffs, on the one hand, own a one-half interest in the "West View Property" and the defendant, on the other hand, owns the other one-half interest. Depending upon the determination of this issue, the questions with respect to an accounting for the rents follow as a matter of course.

The answer of the defendant, Vernon Tanner, admitted certain allegations of the complaint but denied that the plain-

tiffs owned any interest in the "West View Property," alleged that certain rents from the "West View Property" were paid to them at a time when he thought the plaintiffs owned a one-half interest in the property and joined in the prayer for relief, asking for a determination of the respective rights of the parties:

From an examination of the entire record in this case and the report of the Master, it appears to the Court that a great many of the facts in this case are not in dispute. The chief issue seems to be the application of the law to these facts.

It appears that on April 8, 1949, Nettie Cox Tanner died testate, leaving a last will and testament by the terms of which her husband, H. V. Tanner, inherited a life interest in all of the property owned by his wife and the plaintiffs herein inherited all of the remainder of the property of Nettie C. Tanner after the death of Dr. Tanner. Harvey V. Tanner, a retired Baptist Minister, died intestate on February 13, 1952, leaving as his sole surviving heir at law the defendant herein. It appears very clearly that the rights of the plaintiffs and the rights of the defendant were the same as existed immediately prior to the death of Dr. and Mrs. Tanner.

The record further shows that on June 1, 1945, Carrie E. Jones executed a deed to H. V. Tanner for the property called the "West View Property," which was recorded on November 30, 1945, in Deed Book 12-F, page 543, R. M. C. Office for Spartanburg County. At the time of the delivery of the deed, Dr. Tanner executed a mortgage to Carrie E. Jones for a portion of the purchase price, this mortgage having been finally paid and cancelled on June 1, 1948. The record further shows that Dr. H. V. Tanner picked up this deed from the R. M. C. Office on January 4, 1947. The uncontradicted testimony of Miss Carrie E. Jones is to the effect that Dr. Tanner came to her house and asked her to go with him and have a joint deed made to him and his wife. It further appears that Dr. Tanner came by and picked her up and took her to the office of J. Wright Nash, a prominent

attorney in this town, where she signed another deed to the "West View Property" on January 25, 1947. This deed was from Carrie E. Jones to H. V. Tanner and Nettie C. Tanner and recited a consideration of $5.00 and the premises. The second deed was recorded in the R. M. C. Office for Spartanburg County, on February 6, 1947, in Deed Book 13-P, page 522. This second deed bore on the back thereof the following notation:

"This is a correction Deed to take the place of a Deed filed at the Register of Mesne Conveyance Office at Spartanburg, South Carolina, for Spartanburg County on November 30, 1945, and recorded in Vol. 12-F, page 543."

The evidence and the record further shows that Dr. Tanner picked up this second deed on February 24, 1947, and that he signed for it himself. Also, in January or February of 1947, a tax return was made in the office of the County Auditor. This return was filed by H. V. Tanner and reported a sale of the property in question to H. V. Tanner and Nettie C. Tanner. At the same time the Auditor's records show that a new return was made by H. V. Tanner showing the ownership of property by H. V. Tanner and Nettie C. Tanner and consisting of a lot and four buildings, which is the property in question. The Auditor's records further show that after the death of Mrs. Tanner on April 8, 1949, Dr. Tanner again returned this property in the name of H. V. Tanner and Nettie C. Tanner.

After the death of Mrs. Tanner, on April 8, 1949, her husband, Dr. H. V. Tanner, who was the named executor therein, applied for and was appointed executor of her last will and testament. Documentary evidence was introduced into the record showing that Dr. Tanner filed a petition to prove her will in common form and at the same time gave a list of the property owned by Mrs. Tanner, and this list was sworn to by him. He listed Mrs. Tanner as owning a one-half interest in the "West View Property." The appraisal sheet from the estate of Nettie C. Tanner was introduced in the record and listed a one-half interest in this prop-

erty as being owned by Nettie C. Tanner. Of course, at this time Dr. Tanner was the executor and it was his duty under the law to furnish the appraiser with a list of the property owned by his wife. There was further introduced in the record various tax returns showing that the real estate taxes on the "West View Property" were paid in the name of H. V. Tanner and Nettie C. Tanner from June, 1947 up until the time of this hearing. All of the above facts are proved beyond doubt.

Other witnesses appeared in behalf of the plaintiffs, supporting their contention that this property was purchased by H. V. Tanner and Nettie C. Tanner and that it was Dr. Tanner's intention that his wife owned a one-half interest in the property. Some of the evidence was not admitted by the Master and was placed on the excluded sheet. It appears that the Master was in error in excluding this testimony which will be briefly reviewed since it was competent and admissible to show the intention of the parties and how Dr. and Mrs. Tanner regarded the ownership of this property.

Mr. Andrew West testified that after the death of Mrs. Tanner, Dr. Tanner came to him and asked his help in buying the remainder interest of Miss Alice and Onah Cox in the "West View Property." Dr. Tanner authorized him to offer $2,000.00 to the Misses Cox on one occasion and later authorized him to offer $3,000.00.

Simpson W. Cox testified that Dr. Tanner came to him and asked him to intervene with his sisters and see if they would sell their interest in this property for $2,000.00 and Mrs. Ella Hughes Cox described a conversation with Mrs. Tanner in which she said that she had worked very hard to pay for the property and that she wanted her sisters (the plaintiffs herein) to have it. It appears to the Court that the above conversations were improperly excluded by the Master and they are hereby taken off the excluded sheet and considered with the other evidence. In the first place, no grounds for objections were cited.

Mr. C. Yates Brown, a lawyer of long practice and experience at this Bar, testified that he drew Mrs. Tanner's will and that after her death Dr. Tanner came to his office seeking his intervention in purchasing the interest of the two sisters in the "West View Property." Mr. Brown further testified that Dr. Tanner told him his wife put something under $2,000.00 in the property and that the original deed was made to him individually but "it was the intention that the deed should have been made to the both of them."

Mr. W. R. Cathcart, in the Office of the County Superintendent of Education, testified with respect to the earnings of Mrs. Tanner from September, 1945, until February, 1949. The evidence further shows that Mr. Tanner taught music in the afternoon.

It also appears that Dr. Tanner was a retired Baptist Minister and did occasional supply work but had no regular Church from the time he moved back to Spartanburg County until the time of his death. There is some evidence to the effect that he owned some property in Ohio and that it was sold prior to his coming back to South Carolina. However, the chief evidence upon which this would appear to be based was excluded by the Master and the defendant has made no exception to this ruling. Therefore, the Court will not consider same since it appears that the Master properly excluded this documentary evidence which appears to be marked Exhibit 20. Under the view I take of the case, however, the exact amount of the contributions toward the purchase of this house made by Mrs. Tanner or Dr. Tanner are not the controlling facts.

From a consideration of all the documentary evidence and all of the other evidence in support of the plaintiffs claim, the deed to the "West View Property" was made in the original instance to H. V. Tanner through error and that later, on discovering the mistake, a new deed was executed by Carrie E. Jones to Harvey V. Tanner and Nettie C. Tanner which, without question, carried out the intention of all parties. The defendant makes a

great point of the fact that a course and distance was omitted from the first deed and supplied in the second deed and that this was the chief reason for executing and recording the second deed. However, this contention is wholly at variance with the great amount of evidence to the contrary that the chief reason for executing the second deed was due to the fact that Mrs. Tanner's name was omitted from the first deed. The testimony of Miss Jones is very clear and positive on this point and all of the evidence and statements made by Mr. Tanner can lead to only one conclusion and it is that from the very start he and Mrs. Tanner owned this property as tenants in common. It is difficult to see how any other conclusion can be reached from the evidence in this record. There is no question but that Mrs. Tanner died thinking and believing that she owned a one-half interest in the "West View Property" and there is not the slightest doubt but that Dr. Tanner, from the date of his wife's death until his death, believed that he owned only a one-half interest in the property and that the other half was owned by his wife's heirs at law.

This action is an equitable action. A court of equity must mete out justice according to the facts before it. Right justice and equity require a holding that the deed from Carrie E. Jones to Harvey V. Tanner and Nettie C. Tanner, dated January 25, 1947, and recorded in Deed Book 13-P, page 522, should be given its full effect of taking the place of the prior deed dated November 30, 1945, and recorded in Volume 12-F, page 543. By so doing, we give effect to the intention of the parties and the first deed is cancelled and rescinded by operation of the agreement and intention of the parties themselves.

In reaching this conclusion, the Court is impressed by the fact that there are no third, innocent or disinterested parties in this case. All of the parties hereto had notice of the manner in which Dr. and Mrs. Tanner regarded the ownership of the "West View Property." The plaintiffs and the defendant are in the same position, from a legal standpoint, as

Dr. Tanner and his wife would have been had this litigation arisen when they were both alive. Now the equities are more firmly established in that there is an abundance of evidence to show that Dr. Tanner completely recognized title in his wife to one-half thereof, and, more persuasive still, that young Tanner recognized the same title in his stepmother and, accordingly, the plaintiffs herein.

The defendant advances the thought that Carrie E. Jones had absolutely no interest to convey at the time the second or correcting deed was signed. Obviously, Dr. Tanner considered that she had an interest to convey or else the second deed would not have been sought.

There is ample law to suport the above conclusion. A second deed is, in every respect, a good deed and is effective to convey title; the second deed in this case recites that it is to take the place of the prior or first deed. The evidence shows beyond doubt that it was the intention of Dr. Tanner that the second deed was the effective conveyance. The statement in 26 C. J. S., Deeds, § 174, with respect to the cancellation of the first deed by the Grantee's accepting a subsequent inconsistent deed from the Grantor, is very appropriate to this action:

### "Rescission or Cancellation

"A deed, being delivered, can be canceled only with the consent of the grantee and the grantor. * * * A cancellation and return of the deed will not, as a general rule, revest the title in the grantor, nor will it extinguish intervening rights of third persons, although under the facts of particular cases it has been held that, if an unrecorded deed is canceled by the consent of the parties thereto, it may operate to restore the estate to the grantor, if the rights of third persons have not intervened. *So,* as between the parties and persons with notice, a deed, although recorded, is vacated and annulled by the acceptance by the grantee of a subsequent inconsistent deed from the grantor * * *."

And, in 26 C. J. S., Deeds, § 31, we find the following which is very apropriate to this action:

Correction of Deed by
Subsequent Instrument

"Where there is no fraud and the rights of third persons have not intervened, and equity could have reformed the deed, it may be amended by a subsequent instrument so as to effectuate the intention of the parties. * * * However, the instrument must be a present conveyance of the property involved, sufficient of itself to convey title. Such new deed may constitute a single instrument and operate as a destruction of the original conveyance by consent. * * *"

The plaintiffs also asked for an accounting of the rents and profits of the "West View Property." It apears to the Court that the evidence in the record is insufficient to determine in exact dollars and cents the amount of rent collected and the amount to which the defendant and the plaintiffs are respectively entitled. It would further appear to be a matter of bookkeeping, and, on this point, the Court feels that it would be proper for the defendant, Vernon Tanner, to be required to file a written account of the rents collected and the expenses in connection with the "West View Property." It may be that upon the filing of this written account, the plaintiffs will have no objections thereto and this matter can be settled, otherwise, it will be necessary for the Master to take further testimony in order to determine this matter. The finding of the Master that the defendant, Vernon Tanner, has made necessary repairs and improvements on the "West View Property" in excess of $500.00 is an insufficient recommendation upon which to base an order.

The Court concluded from an examination of the evidence that there is one main house and two small houses located on the "West View Property." There is no evidence in the record which could lead to any definite conclusion that this property could not be divided in kind and thereby protect the interest of all parties. For that reason, the Court is refraining

from passing upon the question of whether or not it is feasible to divide it in kind or whether or not it ought to be sold in order to partition same. Furthermore, it appears that these parties own other property as tenants in common which must necessarily be taken into consideration.

The Master made some reference to, but no specific recommendation thereabout, a hospital bill of Mrs. Tanner which Vernon Tanner allegedly paid out of rents and profits. It is difficult to see how this was an issue in this case since it appears from a record introduced into evidence that a claim was filed by the administrator of the estate of Nettie C. Tanner against the estate of H. V. Tanner, the same never having been disposed of in the Probate Court. It appears that this aspect of the case should be first determined in the Probate Court and should not be considered in the accounting to be filed by the defendant in this case.

Such exceptions of the plaintiffs as are supported by the above findings and conclusions are hereby sustained and the report of the Honorable LeRoy Moore, Master for Spartanburg County, dated May 4, 1955, is overruled to the extent that it is contrary to the findings and conclusions herein set forth. Accordingly,

*It is ordered, adjudged and decreed* that the plaintiffs herein, Alice Cox and Onah Cox are the owners in fee simple of an undivided one-half interest in and to the following described property, the defendant, Vernon Tanner, owning the other one-half undivided interest:

"All that piece, parcel or lot of land in Spartanburg County, State of South Carolina, and being on the North side of old road leading from Spartanburg, South Carolina, to Reidville, South Carolina, and having the following metes and bounds, to wit: Beginning at a stake at the Northeast corner of Lot No. 7 in the line of Tract No. 3 (rear) ; thence S. 63 E. 156.5 feet to a stake, Northwest corner of Lot No. 9; thence S. 40½ W. 338 feet with the line of Lot No. 9 to a stake in side road; with the Northern edge of said road N.

63 W. 127 feet to the Southeast corner of Lot No. 7; thence with the line of Lot No. 7 N. 36¼ E. 336 feet to the beginning corner, being known and designated as Lot 8 on plat of subdivision of lands belonging to D. P. L. Steadman, dated December, 1917, and made by L. P. Epton, Surveyor, said lot containing One (1) acre, more or less; the above named plat is recorded in Plat Book 5 at Page 199, R. M. C. Office for Spartanburg County, reference being made to said plat for a complete description."

*It is further ordered* that the defendant, Vernon Tanner, be and he is hereby required to file with the Master for Spartanburg County, within 21 days after the date of this order, a written accounting of the rents and other profits received by him from the "West View Property" together with such expenses incurred in connection with said property during the period of time from the death of Dr. Tanner on February 13, 1952, to the date of this order. Should this account be disputed, then the Master·is authorized to take additional testimony and make recommendations thereon.

*It is further ordered* that the Master for Spartanburg County be and he is hereby authorized to take further testimony with respect to whether or not the "West View Property" and the other property owned by these parties can be partitioned in kind and to make a recommendation thereon to this Court with respect thereto.

*It is further ordered* that the costs of this action be taxed against the defendant.