2002 UT 133

**ARNOLD INDUSTRIES, INC., a Utah corporation, Plaintiffs and Appellants,**

v.

**William S. LOVE, Irene C. Love, individuals; Conmart, Inc., a Utah corporation; Salt Lake County, a political subdivision of the State of Utah; and Katie L. Dixon, individually and in her capacity as former Salt Lake County Recorder, Defendants and Appellees.**

**William S. Love and Irene C. Love, Counterclaimants and Third–Party Plaintiffs,**

v.

**Arnold Industries, Inc., a Utah corporation; William J. Lowenberg; Western Management, a partnership; Smith, Halander, Smith and Associates, a partnership; Minson–Halander, Inc., a Utah corporation; H. Fred Smith; Roland W. Smith; Dale N. Minson; and Robert S. Halander, Counterclaimants and Third–Party Defendants.**

No. 20010266.

Supreme Court of Utah.

Dec. 31, 2002.

Ronald G. Russell, Salt Lake City, for William S. Love and Irene C. Love.

David E. Yocom, Kevan F. Smith, Salt Lake City, for Salt Lake County and Katie Dixon.

Blake T. Heiner, Salt Lake City, for William J. Lowenberg.

L. Benson Mabey, Salt Lake City, for Robert S. Halander, Dale N. Minson, Conmart, Western Management, Smith, Halander, Smith, and Associates, Minson–Halander, H. Fred Smith, Roland W. Smith.

Massachusetts Mutual Life Insurance, pro se.

Marilyn M. Henriksen, pro se.

U.S.A. General Services Administration, pro se.

· HOWE, Justice:

¶ 1 Arnold Industries, Inc. ("Arnold") and William S. Love and Irene C. Love ("Love") filed cross-motions for summary judgment disputing an access easement across Arnold's property for the benefit of Love's adjoining property. The trial court granted Love's motion for summary judgment, following which Arnold filed an amended complaint adding claims against Salt Lake County and the County Recorder. The trial court granted the County's motion to dismiss. Arnold appeals.

## BACKGROUND

### I. GENERAL FACTS

¶ 2 Before 1975, the properties now owned by Arnold (the "Arnold Property") and Love (the "Love Property") were commonly owned by Western Management and its partners.[1] The properties were separated in 1975, and until early 1982 both properties were owned by various combinations of four individuals, H. Fred Smith, Ronald W. Smith, Dale N. Minson, and Robert S. Halander, who sometimes appeared as owners in their individual capacities, sometimes as various corporations, and sometimes as Western Manage-

Sherman C. Young, Bill O. Heder, Provo, for Arnold Industries.

1. Although both properties had been previously owned by parties other than Arnold and Love, for the sake of clarity and convenience we refer to the properties as the Arnold Property and the Love Property throughout our discussion.

ment, "A Partnership" or "a Utah general partnership." After the separation of the properties, the only access to a loading dock and offices on the west side of the Love Property was through the Arnold Property parking lot.

¶ 3 This access was still in regular and visible use when Arnold purchased its property in July 1993. However, a title search made prior to purchase failed to reveal the easement, which deficiency Arnold attributes to the County Recorder's failure to properly abstract a 1991 corrective warranty deed. In 1996, Arnold filed this action challenging the easement. Love counterclaimed and moved for partial summary judgment recognizing that the easement over the Arnold Property was validly created and established by conveyances of record in the Salt Lake County Recorder's Office. Arnold responded with a cross-motion for partial summary judgment, seeking a determination that its property was not burdened by an easement. The trial court recognized the easement, granted Love's motion for partial summary judgment, and denied Arnold's cross-motion. Arnold subsequently filed an amended complaint alleging negligence against Salt Lake County, and County Recorder Katie Dixon, for failing to abstract a 1991 corrective warranty deed to the tract index in Arnold's chain of title. The trial court dismissed that complaint. The parties subsequently stipulated to the dismissal of all claims not adjudicated by the two orders, and the court entered a final judgment. Arnold appeals from that final judgment and, in the alternative, appeals from the dismissal of its complaint against the County. This court has jurisdiction under Utah Code Ann. § 78–2–2(3)(j) (2002).

## II.  RELEVANT DOCUMENTS

### A.  The Arnold Property Chain of Title

### 1.  January 1982 Warranty Deed

¶ 4 On January 27, 1982, H. Fred Smith, Rowland W. Smith, Minson, and Halander executed a warranty deed on behalf of Western Management, a Partnership, conveying the Love Property to William J. Lowenberg, "subject to and together with a right of way" over the Arnold Property. The deed was recorded on February 3, 1982, and was abstracted to the Arnold Property in the tract index. At the time of the conveyance, however, title to the Arnold Property was not vested in Western Management. On October 29, 1982, in an attempt to cure that oversight, the four partners who then held title quitclaimed their interest in the Arnold Property to Western Management. This deed was recorded on October 29, 1982, and was abstracted to the Arnold Property.

### 2.  Subsequent Chain of Title

¶ 5 In May of 1984, Western Management conveyed its interest in the Arnold Property to Smith, Halander, Smith and Associates. The deed made no specific reference to the right-of-way, but warranted against "all claiming by through or under" with the specific entity left blank. A warranty deed executed by Smith, Halander, Smith and Associates in June of 1984 conveyed the Arnold Property to Kay L. Walker and Lawrence A. McElliot "[s]ubject to current general taxes, easements and restrictions." Other transactions, not relevant here, followed until 1990 when title to the property was once again in the four partners.

### 3.  Conveyance to Arnold

¶ 6 Three of the partners, H. Fred Smith, Rowland W. Smith, and Halander conveyed their interest in the Arnold Property to Conmart, Inc., Arnold's predecessor in interest, via a quitclaim deed dated November 28, 1990, and recorded on March 8, 1991. Minson apparently retained his interest in the property. In July 1993, Conmart, Inc. and Minson executed a warranty deed conveying their respective interests in the Arnold Property to Arnold Industries, Inc., a Utah corporation. The warranty deed conveying the property to Arnold recites that the conveyance is "Subject to: ... Covenants, Conditions, Restrictions, Rights–of–Way, Easements, Leases and Reservations now of Record."

### B.  The Love Property Chain of Title

### 1.  The January 1982 Warranty Deed

¶ 7 William J. Lowenberg took title to the Love Property, including the easement over

the Arnold Property, through the January 1982 warranty deed as described above.

### 2. The January 1991 Corrective Warranty Deed

¶ 8 Early in 1991 or at some time previously, errors were discovered in the legal description of the easement in the January 1982 warranty deed. A dispute also arose regarding compliance of the Lowenberg's property with local restrictive covenants. Consequently, on January 22, 1991, the four partners, acting in the name of Western Management, "formerly a general partnership," and in the name of Smith, Halander, Smith and Associates, with both organizations "collectively ... acting as grantors of their respective interests," executed a corrective warranty deed curing the defects in the January 1982 legal description of the easement and also defining the right-of-way and limiting it to convenient ingress and egress. This deed was recorded January 23, 1991, and was abstracted in the tract index to the Love Property, but not to the Arnold Property.

### 3. The Quiet Title Decree

¶ 9 On January 24, 1991, the district court entered a quiet title decree adjudicating that the Love Property, then owned by Lowenberg, and its buildings were in compliance with all setback requirements in the restrictive covenants governing the property. Exhibit A of the decree repeated the legal description of the easement from the corrective warranty deed. The quiet title decree was recorded on February 21, 1991, and abstracted to the quarter section wherein lie both the Arnold and the Love properties and to the tract index of the Love Property with a reference to the Arnold Property by tax identification number.

### 4. Conveyance to Love

¶ 10 Lowenberg conveyed his property together with the easement to William and Irene Love by warranty deed in January 1995.

### STANDARD OF REVIEW

■■■■ ¶ 11 We affirm summary judgment only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(c); *see also Tustian v. Schriever,* 2001 UT 84, ¶ 13, 34 P.3d 755. We grant the trial court's legal conclusions no deference, reviewing them for correctness. *Ault v. Holden,* 2002 UT 33, ¶ 15, 44 P.3d 781. Furthermore, " '[i]n reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.' " *DCM Inv. Corp. v. Pinecrest Inv. Co.,* 2001 UT 91, ¶ 6, 34 P.3d 785 (quoting *Dixon v. Pro Image, Inc.,* 1999 UT 89, ¶ 12, 987 P.2d 48).

### ANALYSIS

¶ 12 When Arnold purchased its property in 1993, it took title subject to "Covenants, Conditions, Restrictions, Rights–of–Way, Easements, Leases and Reservations now of Record." Therefore, whether Arnold's land is now subject to the right-of-way in favor of Love's property depends upon whether such an easement was validly created.

### I. VALIDITY OF THE EASEMENT

¶ 13 Arnold attacks the validity of both the January 1982 warranty deed which purported to create the easement and the January 1991 corrective warranty deed which purported to limit the easement and corrected the legal description. We will address each deed in turn.

#### A. *January 1982 Warranty Deed*

1. After–Acquired Title

■■■■ ¶ 14 Arnold contends that the January 27, 1982, warranty deed was void for want of a grantor because when the deed was executed by the Western Management general partners on behalf of Western Management, Western Management held no ownership interest in the Arnold Property and could not grant an easement over it. Nine months later, however, on October 29, 1982, the general partners who then held title quit-

claimed their interest in the Arnold Property to Western Management.

¶ 15 Section 57–1–10 of the Utah Code provides:

> If any person shall hereafter convey any real estate by conveyance purporting to convey the same in fee simple absolute, and shall not at the time of such conveyance have the legal estate in such real estate, but shall afterwards acquire the same, the legal estate subsequently acquired shall immediately pass to the grantee, his heirs, successors, assigns, and such conveyance shall be as valid as if such legal estate had been in the grantor at the time of the conveyance.

Utah Code Ann. § 57–1–10 (2000); [2] *see also Barlow Soc'y v. Commercial Sec. Bank,* 723 P.2d 398, 400 (Utah 1986) (per curiam) (acknowledging that under section 57–1–10 a warranty deed is effective to convey after-acquired title).

¶ 16 Thus, a conveyance made by a grantor not holding fee title to property is binding when the grantor later obtains fee title. The statute has codified in part the equitable doctrine of estoppel by deed, sometimes referred to as the doctrine of after-acquired title. Love asserts that under that doctrine and the statute, the grant of an easement to Lowenberg by the partners on behalf of Western Management in January 1982 was binding upon Western Management when it obtained title nine months later, thereby validating the grant. In *Hall v. Fitzgerald,* 671 P.2d 224 (Utah 1983), this court explained:

> The use of the warranty deed in this case not only assured conveyance of all the vendors' current interest, but would also automatically transfer to the grantees or their successors any "legal estate subsequently acquired." Such is the effect of our statute, as well as the related doctrine of estoppel by deed.

*Id.* at 228 (citations omitted). Arnold insists that section 57–1–10 was ineffective to transfer an easement to the grantee Lowenberg

through after-acquired title since the statutory language is limited to a "legal estate" and an easement is not an estate but rather a servitude. *See Hayes v. Gibbs,* 110 Utah 54, 63–64, 169 P.2d 781, 786 (1946) (defining an easement as a servitude rather than an interest in land).

¶ 17 In *Noronha v. Stewart,* 199 Cal. App.3d 485, 245 Cal.Rptr. 94 (1988), the court was presented with a similar issue. There the defendants were desirous of building a wall that encroached on an adjoining lot. *Id.* at 95. The apparent owner of the adjoining lot, one Jett, gave his oral permission and invited the defendants to come to his office to obtain a written easement. *Id.* However, no written easement was given and, in fact, Jett was not the legal owner of the lot when he gave oral permission for the wall, but under contract was entitled to the lot after a house was built on the property. *Id.* After the wall was constructed, Jett obtained legal title to the lot but held the lot only five days before selling it to the plaintiffs. *Id.* Later, the plaintiffs demanded that the defendants remove the encroaching wall. *Id.*

¶ 18 The court recognized that California's statute on after-acquired title, like Utah's, was limited to conveyances of fee simple and was not applicable to the case then at hand. *Id.* at 96. But the court held that "the common law rule, however, survived the enactment of the statute and is considerably broader" and covered the oral license granted to the defendants to build the wall. *Id.* (citation omitted). Consequently, once Jett became the owner of the lot, he and his successors were estopped from contesting the passage of the easement to the defendant. *Id.* We agree with the reasoning of that case but only as it supports validation of a *written* attempt to grant an easement. We therefore extend recognition of the doctrine of estoppel by deed to cover the written easement attempted to be granted in the instant case. To allow a grantor to deny the terms of its conveyance after acquiring title by repudiating an easement originally intended to be granted would be an invitation to

---

**2.** There has been no material change in section 57–1–10 since the relevant time period. There-

fore, we cite the current code for convenience.

fraud and would contravene the central purpose of the equitable doctrine of estoppel by deed.

## 2. Reasonable Reliance

¶ 19 Arnold contends that Love cannot establish the reasonable reliance necessary to invoke estoppel by deed "because all of the defects in the purported grant of easement were a matter of public record" and therefore Love could not reasonably rely on the existence of the easement. In so doing, Arnold concedes, however unwittingly, that any nominally diligent investigator, including itself, could have discovered all of the relevant deeds. As discussed below, both the defects and the correction were a matter of public record and accessible to Arnold as well as to Love. Furthermore, the relevant party in 1982 was not Love, but Love's predecessor in interest, Lowenberg. Lowenberg reasonably relied on the validity of the 1982 grant of the easement by continuing to use the right-of-way, both before and after the partners quitclaimed their interest in the Arnold Property to Western Management.

## 3. Counter Estoppel

¶ 20 Arnold further argues that counter estoppel is triggered by the 1984 warranty deed reciting that grantor Western Management "Convey[s] and Warrant[s] against all claims by through or under" to grantee Smith, Halander, Smith and Associates with no reference to the easement. However, Arnold cannot establish in the grantee the reasonable reliance necessary to counter estoppel because the natural persons constituting Smith, Halander, Smith and Associates were also partners of Western Management. The Smith, Halander, Smith and Associates partners could not and did not assert that they relied on Western Management's conveyance of the property free of easement. They indisputably had notice of the easement that they had granted on behalf of Western Management in the January 1982 warranty deed and that Lowenberg continued to use.

## 4. Legal Description

¶ 21 Finally, Arnold points to the incorrect legal description of the easement in the January 1982 warranty deed, which "describes no part of the Arnold Property." This problem, however, was cured by the 1991 corrective warranty deed which was executed and recorded before Arnold took title. A corrective deed relates back to the time of the original conveyance. "The doctrine of relation back permits a party to a conveyance of real property to correct an erroneous legal description in the original deed by filing a subsequent or 'correction' deed; the correction then becomes effective as of the date of the original deed." *Sartain v. Fid. Fin. Servs., Inc.,* 116 Idaho 269, 775 P.2d 161, 164 (Ct.App.1989); *see also infra* ¶ 23 & ¶ 26.

### B. The January 1991 Corrective Warranty Deed

¶ 22 Arnold attacks the validity of the January 1991 corrective warranty deed on the bases that (a) the deed was signed by Smith, Smith, Minson, and Halander as General Partners of Western Management when, in fact, they were record owners of the Arnold Property individually; (b) the deed contains no language of conveyance; and (c) a corrective deed cannot affect the interests of third parties. We address these points in turn.

## 1. Grantor

¶ 23 The corrective warranty deed states:

WHEREAS, Western Management, formerly a general partnership consisting of H. Fred Smith, Ronald W. Smith, Dale M. Minson, and Robert S. Halander; and Smith, Halander, Smith and Associates, a partnership, consisting of H. Fred Smith, Ronald W. Smith and Robert S. Halander (successor in interest to a portion of the property described in the amended legal description which is presently titled in the name of Smith, Halander, Smith and Associates) herein collectively are acting as grantors of their respective interests.

A corrective warranty deed, in order to be effective, must be executed by the same grantor that executed the original warranty deed. "[A] mistake in the description of the land conveyed may be corrected by a subse-

quent deed executed by the same grantor for the purpose of correcting the description and confirming in the grantee the title to the land intended to have been described in the prior deed[.]" 23 Am.Jur.2d *Deeds* § 333 (1983). The former Western Management partners complied with this requirement, executing the deed on behalf of Western Management, as they had in the January 1982 warranty deed. Thus, the 1991 deed was "executed by the same grantor" as the January 1982 deed. Additionally, because the deed was signed by each member of the former partnership, each member effectively conveyed his individual interest in the property. Section 48–1–7 of the Utah Code provides in part that "[w]here the title to real property is in the names of all the partners a conveyance executed by all the partners passes all their rights in such property." Utah Code Ann. § 48–1–7 (2002).[3] Although Arnold asserts that the members executed the deed only on behalf of their former partnership and did not convey their individual interests therein, such an interpretation of the deed would render the deed ineffective to accomplish its objective, which was to validate the easement which the parties had previously attempted to create and to correct the legal description of the easement. We will not presume that the members intended to perform a useless act but will construe the deed to give effect to the parties' intentions. *See* 26A C.J.S. *Deeds* § 170 (2001) (stating that an instrument intended to operate as a deed should be so contructed as to give it force and effect and to render it valid where possible).

### 2. Conveyance

¶ 24 Arnold argues that the 1991 corrective warranty deed was ineffective to grant an easement because "the deed lacks the necessary statutory language to effectuate a conveyance in 1991." This argument, however, fails to apprehend the function of a corrective or confirmation deed. 23 Am. Jur.2d *Deeds* § 11 (2002), under the heading "Confirmation deed," states that "[t]he purpose of a correction deed is to admit mutual error and change the original instrument to conform to the true intent of the parties. A mistake in the omission of parties may be corrected by a deed of correction to effectuate the intention of the parties." The 1983 edition of 23 Am.Jur.2d provides a more complete explanation of the manner in which a deed and a corrective deed operate together as one valid conveyance.

> A deed of confirmation may be appropriately utilized in order to remove doubts as to the operativeness of a prior deed *to* convey title to the land intended. . . . [T]he two deeds, taken together, will operate to pass the title to the grantee named therein. The correction deed need not restate all material portions of the deed being corrected if such portions contain no errors.

23 Am.Jur.2d *Deeds* § 333 (1983).

¶ 25 Therefore, because the 1982 warranty deed and the 1991 corrective warranty deed functioned together, according to the intention of the grantors, to validly create and convey a right-of-way over the Arnold Property for the benefit of the Love Property, the language of conveyance in the 1982 warranty deed was sufficient for both.

### 3. Interests of Third Parties

¶ 26 Arnold objects that a corrective warranty deed cannot impact the interests of third parties. In the instant case, however, whatever had transpired in the interim, the same persons executed the 1982 warranty deed and the 1991 corrective warranty deed. Lowenberg, the grantee in 1982, still owned the property benefitted by the easement. Thus, as of January 1991, there were no third parties of record with an interest in either property whose rights could intervene. The fact that the Arnold Property may have been conveyed away from Western Management or its partners and then conveyed back between 1982 and 1991 is irrelevant where none of the intervening fee holders could claim a current interest in the property, or point to any way in which the 1991 corrective warranty deed altered their interests.

---

**3.** There has been no material change to section 48–1–7 since the relevant time period. We there-fore cite the current code for convenience.

¶ 27 The four partners could not, and did not, claim that the 1991 corrective warranty deed compromised their rights in the Arnold Property. Consequently, Arnold's arguments on property ownership in a partnership, entity theory, and agency law are irrelevant in this context, and the 1982 warranty deed and the 1991 corrective warranty deed, acting together, operated to create a valid easement for a right-of-way burdening the Arnold Property for the benefit of the Love Property.

## II. RECORDING AND INDEXING

■ ¶ 28 The warranty deed to Arnold from its predecessor in interest, Conmart, Inc., conveyed the property subject to any right-of-way "now of Record." At the time Arnold filed this action, section 17–21–6 provided:

> Every recorder must keep:
>
> (1) An entry record, in which the recorder shall immediately upon receipt of any instrument to be recorded, enter in the order of its reception or entry, as the case may be, the names of the parties thereto, its date, the hour, the day of the month and the year of filing any such statement and a brief description of the premises, endorsing upon each instrument a number corresponding with the number of such entry.

Utah Code Ann. § 17–21–6(1) (1995).[4] Arnold does not dispute that all of the relevant deeds were recorded, in terms of being entered into the record by the recorder, as described above. Therefore, there can be no claim that the January 1982 and the January 1991 deeds were not "now of record."

¶ 29 Nevertheless, Arnold contends that third parties are entitled to rely upon the record title and thus it took without notice of the 1991 corrective warranty deed. This argument actually centers around the indexing rather than the recording of the deeds, taking us to the issue of notice. The Recorder Act also required the recorder to keep, *inter alia,* a grantors' index, a grantees' index, and an "abstract record ... by tract."[5] Utah Code Ann. § 17–21–6(2), (3), (6) (1995).

¶ 30 Arnold asserts that the 1991 corrective warranty deed was not properly abstracted to the Arnold Property in the recorder's tract index. Furthermore, he complains that the deed is indexed to Lowenberg in the grantor and grantee indexes although Lowenberg was the previous owner of the Love Property and never owned an interest in the Arnold Property. Therefore, Arnold avers that it had no notice of the 1991 deed and attempts to leap from that premise to the conclusion that it took the property as a bona fide purchaser for value without notice of the easement. We disagree. When Arnold took title in 1993, the disputed right-of-way was in open and obvious use by Lowenberg, Love's predecessor in interest. Arnold's warranty deed informed it that its property was subject to easements of record, and visual observation confirmed that an apparent right-of-way was indeed in use. This use continued, ostensibly without objection by Arnold, until after Lowenberg conveyed his interest to Love in 1995, at which time Love commenced use of the right-of-way. Furthermore, Arnold does not dispute that the 1982 warranty deed, expressing at least the intention to create an easement for the benefit of the adjoining Love Property, appeared in Arnold's chain of title. In such circumstances, Arnold was not a bona fide purchaser for value without notice.[6]

¶ 31 Arnold relies on *County Board of Equalization v. State Tax Commission,* 789 P.2d 291, 296 (Utah 1990) (Howe, J., dissent-

4. Section 17–21–6 was rewritten in 1999. Utah Code Ann. § 17–21–6 (2001) (historical notes). However, it remained unchanged during the times relevant to this case. We therefore cite the code volume in effect when Arnold filed this action.

5. The "abstract record" is referred to as the "tract index" in the current statute, Utah Code Ann. § 17–21–6(1)(f) (2001), and in this action.

6. Arnold attempts to make an issue of the distinction between constructive notice of an easement and constructive notice of a claim of easement. Because we have determined that an easement in fact existed, we need not address that issue.

ing), for the proposition that "[t]here is not 'constructive notice' when inquiry extrinsic to the public record is necessary." In that case, however, "there was nothing on the tax rolls to show that any building was on the land on January 1, 1984. Only an inquiry extrinsic to the tax rolls would have revealed that." *Id.* In the instant case, contrastingly, all of the relevant deeds describing the easement were part of the public record when Arnold purchased the property. In *First American Title Insurance v. J.B. Ranch,* 966 P.2d 834, 837 (Utah 1998), we recognized that in addition to constructive notice resulting from a record or imputed from the recording statutes, a second type of constructive notice "is presumed because of the fact that a person has knowledge of certain facts which should impart to him, or lead him to, knowledge of the ultimate fact." Thus, observation of use gave Arnold constructive notice of a right-of-way across his property for the benefit of the adjacent Love Property. Arnold was therefore on notice to inquire within the public record.

¶ 32 The logical first records to be searched in an investigation of reasonable diligence would be the grantor/grantee indexes and the tract index. Western Management appears as grantor on the 1982 warranty deed. Therefore, Western Management would be an obvious grantor to search. The 1991 corrective warranty deed is indexed to the name of Western Management, Ptr., in addition to William J. Lowenberg, in the grantors and grantees indexes. Thus, a search of documents indexed to Western Management would disclose the 1991 corrective warranty deed.

¶ 33 Turning to the tract index for the northeast quarter of Section 21, Township 1 South, Range 1 West, Salt Lake County, in which the Arnold Property is located, Arnold would also encounter the abstract of the 1991 corrective warranty deed in connection with a portion of the adjacent Love Property, which Arnold knew was the beneficiary of the easement. In addition to the 1991 deed's metes and bounds description of the Love Property, the abstract contains the instruction "SEE DOCUMENT FOR ADDITIONAL DESCRIPTION." Therefore, with little

or no effort other than searching the title of his own property, and the very part of the tract index where abstracts relating to his own property were located, Arnold would be directed to the 1991 corrective deed.

¶ 34 Furthermore, the quiet title decree contained the same description of the easement found in the 1991 deed. Arnold contends that the description of the easement in exhibit A of the decree is not part of the operative language of the decree, and does not adjudicate the right-of-way. This is true, but it is beside the point. Regardless of its role in establishing the easement, the decree is important as evidence of the right-of-way. The quiet title decree is also correctly indexed to the east half of the northeast quarter of Section 21. After identifying the Love Property, the abstract of the decree states "(R/W EASE RUNS ACROSS PARCEL NO. SEE DOC)." Furthermore, the tax identification number for the Arnold Property appears immediately to the left of that portion of the abstract.

¶ 35 Therefore, we hold that Arnold had constructive notice of an easement and that an investigation of reasonable diligence within the public record would have given him actual notice of an easement. The County Recorder's failure to abstract the 1991 corrective warranty deed to Arnold's property in the tract index did not deprive Arnold of notice of the easement, nor put discovery of the easement outside the range of reasonable diligence. Because Arnold consequently has no cause of action against Salt Lake County or the County Recorder, we do not reach the issue of the timeliness of the action against those parties.

¶ 36 We affirm the trial court's grant of summary judgment to Love, and the denial of summary judgment to Arnold. We further affirm dismissal of the amended complaint against Salt Lake County and its Recorder.

¶ 37 Justice Russon, Justice Wilkins, and Judge McIff concur in Justice Howe's opinion.

¶ 38 Having disqualified themselves, Chief Justice DURHAM and Associate Chief Jus-

tice DURRANT do not participate herein; District Judge K.L. McIFF sat.