2019 UT App 87

# THE UTAH COURT OF APPEALS

A-FAB ENGINEERING,
Appellant,
*v.*
PROPERTY TAX DIVISION OF THE
UTAH STATE TAX COMMISSION,
Appellee.

Opinion
No. 20180014-CA
Filed May 23, 2019

Second District Court, Farmington Department
The Honorable David M. Connors
No. 170700397

Lynn Kingston, Attorney for Appellant

Sean D. Reyes, Erin T. Middleton, and Chauntel M.
Lopez, Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

MORTENSEN, Judge:

¶1    "[I]n this world nothing can be said to be certain, except
death and taxes."[1] Nearly as certain is the procedural bar

---

1. Like many good quotations, there is some dispute as to this
quotation's origin. *The Yale Book of Quotations* attributes the
saying to Christopher Bullock. *See* Fred R. Shapiro ed., *The Yale
Book of Quotations* 610 (Yale Univ. Press 2006) (discussing
Christopher Bullock, *The Cobler of Preston* (1716) ("Tis impossible
to be sure of anything but Death and Taxes.")). But since there is
apparently little doubt as to the use of this phrase in a letter from
Benjamin Franklin, we will lay our attribution there. *See* Letter

(continued…)

attendant to court challenges when a party has failed to exhaust administrative remedies, resulting in an absence of jurisdiction. A-Fab Engineering (A-Fab) challenges two property tax assessments levied in 2012 and 2013 by the Utah State Tax Commission (Commission). The Commission dismissed A-Fab's administrative appeal as untimely. A-Fab then petitioned the district court for review of the Commission's decision. The district court summarily dismissed the petition because (1) A-Fab did not timely exhaust its administrative remedies; and therefore, the court lacked subject matter jurisdiction; and (2) A-Fab was not entitled to equitable tolling of the deadline to file an administrative appeal. We affirm.

BACKGROUND[2]

*The Property*

¶2    A-Fab is a Utah corporation that fabricates, refurbishes, and sells equipment. In or before 2007, A-Fab acquired and rebuilt a "long-wall mining system" (Property). In September 2007, A-Fab sold the Property to C.W. Mining (CW). The sale was financed through a capital lease. In January 2008, however, CW involuntarily entered into bankruptcy, and the bankruptcy court asserted jurisdiction over the Property.

---

(…continued)
from Benjamin Franklin to Jean-Baptiste Le Roy (Nov. 13, 1789), *in* 10 *The Writings of Benjamin Franklin* 68, 69 (A. Smyth ed., 1907).

2. Because this is an appeal from summary judgment, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (cleaned up).

¶3     In December 2008, A-Fab filed a proof of claim in the bankruptcy proceeding, asserting that it owned the Property, and sought "substantial amounts for lease rejection damages." The trustee of the bankruptcy estate responded by filing a complaint against A-Fab that included, among eleven claims for relief, a claim of ownership over the Property. In 2010, while the Property dispute was still pending, the bankruptcy court ordered that A-Fab could take possession of the Property, but that the Property would still be subject to the bankruptcy trustee's authority before it could be sold or transferred in any way. A-Fab took possession of the Property shortly thereafter.

¶4     A-Fab regained full ownership rights to the Property in 2014 when it entered into a settlement agreement with the bankruptcy estate. Under the terms of the settlement, the bankruptcy estate relinquished any and all claims to the Property in return for a $225,000 payment from A-Fab. The bankruptcy court approved the settlement agreement in November 2014.[3] In the motion to approve the settlement

---

3. A-Fab argued for the first time at oral argument that it did not regain ownership rights to the Property until early 2016. However, "[w]e do not address issues raised for the first time during oral argument," *Porenta v. Porenta*, 2017 UT 78, ¶ 33, 416 P.3d 487, and, in any event, this argument is unsupported by the record and at odds with the position taken by A-Fab below and in briefing before this court. First, the record demonstrates that the settlement was executed in October 2014 and the bankruptcy court approved the settlement in November 2014. Second, A-Fab stated in its petition for review to the district court, "On October 29, 2014, A-Fab entered into a settlement agreement with the Trustee of the CW estate, in which the Trustee relinquished his claim on the Property." Third, in its opposition to the Commission's motion for summary judgment, A-Fab did not dispute the terms of the settlement agreement and affirmatively

(continued…)

agreement, the bankruptcy trustee noted that "A-Fab asserted that it owned the [Property] and was leasing it to [CW] under a purported September 1, 2007 lease" and "A-Fab has asserted that it incurred substantial removal, storage and preservation costs, including *the payment of personal property taxes*, in connection with . . . the [Property]." (Emphasis added.)

*The Property Tax Assessments*

¶5      As required by Utah Code sections 59-2-201 and 59-2-202(1), A-Fab completed and filed its 2012 annual return for assessment of personal property (Return) with the Commission on March 1, 2012. A-Fab's 2012 Return listed the Property as being "subject to assessment by the State Tax Commission."[4] Based on the 2012 Return, the Commission prepared a notice of assessment and mailed it—to the address provided by A-Fab on its 2012 Return—on May 1, 2012.

¶6      On February 27, 2013, A-Fab filed its 2013 Return and again listed the Property as being "subject to Assessment by the State Tax Commission." A-Fab attached to the 2013 Return a letter requesting that the Commission reconsider the value of the

---

(…continued)

alleged that upon the agreement's approval in November 2014, it "essentially purchased the [P]roperty" back from the bankruptcy estate. Finally, A-Fab concedes these points in its opening brief without arguing that it did not actually regain its rights to the Property until 2016.

4. We note that A-Fab's 2012 Return includes only the statement "* NO ADDITIONS * . . . * NO DELETIONS *"—however, it was undisputed below that the Property was listed on previous returns for assessment. In other words, it is an undisputed fact that the Property was included on A-Fab's 2012 Return.

Property. In this letter, A-Fab included an independent appraisal of the Property and "urge[d] the Tax Commission to reconsider its 2013 assessment of the value of [the Property]." The Commission prepared a notice of assessment and mailed it on May 1, 2013, to the address provided by A-Fab on the 2013 Return. A-Fab did not appeal or pay the 2012 and 2013 assessments (Assessments) within the prescribed tax years.

¶7     A-Fab appealed the Assessments in December 2016. Earlier that year, A-Fab had "inquired of Carbon County whether there were any taxes owed [on the Property] before 2014"—when A-Fab's ownership rights to the Property were restored—and Carbon County responded that there were not. On June 15, 2016, however, Carbon County mailed a delinquent tax notice, based on the Assessments, to the address provided by A-Fab on its Returns. A-Fab initially raised a challenge to the delinquent tax notice with Carbon County, but the county instructed A-Fab that a formal appeal would need to be taken up with the Commission.

### The Proceedings

¶8     On December 6, 2016, A-Fab filed an administrative appeal with the Commission challenging the Assessments. The Commission issued an order to show cause directing A-Fab to explain why its appeal should not be dismissed for failure to timely file.[5] In its answer, A-Fab argued that equitable tolling should extend the deadline to appeal because the Property was subject to CW's bankruptcy proceedings until October 2014. The

---

5. To timely challenge the Assessments, A-Fab was required to request a hearing "on or before the later of June 1 or a day within 30 days of the date the notice of assessment is *mailed* by the commission." Utah Code Ann. § 59-2-1007(1)(a) (LexisNexis 2008) (emphasis added).

Commission rejected A-Fab's argument concluding that A-Fab failed to timely appeal the Assessments and further failed to "demonstrate extraordinary circumstances or due diligence sufficient" to toll the deadline to appeal. Specifically, the Commission concluded that A-Fab knew that it included the Property on its 2012 Return and 2013 Return and therefore knew the Property would be assessed for those years. The Commission also decided that A-Fab was not excused from missing the deadline to appeal because it had regained full ownership rights to the Property in October 2014 and "yet it still did not file this appeal until December 6, 2016." A-Fab then petitioned the district court for review of the Commission's decision.

¶9     The parties filed cross-motions for summary judgment in the district court. The Commission argued that "A-Fab's petition should be dismissed because it did not exhaust its administrative remedies by filing a timely appeal to the Commission" and that "equitable tolling would be inappropriate because A-Fab waited until December 2016—more than two years after it settled with the bankruptcy trustee—to appeal the [Assessments]." A-Fab argued that the Commission lacked the authority to assess the Property and that the untimely administrative appeal was therefore inconsequential. In the alternative, A-Fab argued that equitable tolling should apply and extend the deadline to appeal because: although the Commission had mailed the Assessments, A-Fab never actually received the Assessments because they were mailed to A-Fab's old address.

¶10     The district court granted the Commission's motion. In the court's ruling and order, it found that "A-Fab did not file its appeals for the 2012 and 2013 tax years until December 6, 2016, well after the deadlines of June 1, 2012, and June 1, 2013, respectively," and thus concluded that "A-Fab did not exhaust its administrative remedies and therefore the Court does not

have subject matter jurisdiction."[6] The district court also concluded that equitable tolling did not extend the deadline to file an appeal because A-Fab "was given clear ownership of the Property in 2014"—and therefore, "[e]ven if equitable tolling were applicable, . . . A-Fab's appeal would still be untimely." The court reasoned that even if "A-Fab was uncertain regarding its obligations to pay taxes on the Property, A-Fab clearly knew that the Tax Commission believed the tax payments on the Property were A-Fab's responsibility" because "an attorney for A-Fab sent a letter to the [Commission] disputing the valuation of the Property." Finally, "A-Fab asserted that it owned the property and was leasing it to [CW]," and therefore, "because A-Fab was asserting an ownership interest in the Property and had been provided [the Assessments], equitable tolling is inapplicable."

¶11    A-Fab appeals.


ISSUES AND STANDARDS OF REVIEW

¶12    The first issue raised is whether the district court erred by dismissing A-Fab's petition for judicial review and finding that it lacked subject matter jurisdiction due to A-Fab's failure to exhaust administrative remedies. A district court's order dismissing a claim for lack of subject matter jurisdiction due to the failure to exhaust administrative remedies is reviewed for correctness. *Nebeker v. Utah State Tax Comm'n*, 2001 UT 74, ¶¶ 11–12, 34 P.3d 180.

¶13    The second issue is whether the district court erred in concluding that no genuine issue of material fact existed when it

---

6. The district court noted that because it lacked subject matter jurisdiction it declined to address A-Fab's contention that the Commission lacked the authority to tax the Property.

granted summary judgment in favor of the Commission on the issue of equitable tolling. "We affirm summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Arnold Indus., Inc. v. Love*, 2002 UT 133, ¶ 11, 63 P.3d 721 (cleaned up). "We grant the [district] court's legal conclusions no deference, reviewing them for correctness." *Id.* And "in reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Id.* (cleaned up).

ANALYSIS

I. Administrative Remedies

¶14   "As a general rule, parties must exhaust applicable administrative remedies as a prerequisite to seeking judicial review." *Nebeker v. Utah State Tax Comm'n*, 2001 UT 74, ¶ 14, 34 P.3d 180 (cleaned up). This court has held that an untimely appeal to an administrative agency is the equivalent of failing to exhaust administrative remedies—which deprives a district court of subject matter jurisdiction. *Republic Outdoor Advert., LC v. Utah Dep't of Transp.*, 2011 UT App 198, ¶ 30, 258 P.3d 619.

¶15   Here, it is undisputed that A-Fab failed to timely appeal the Assessments. *See* Utah Code Ann. § 59-2-1007(1)(a) (LexisNexis 2008) (providing that to appeal an assessment, a party must request a hearing "on or before the later of June 1 or within 30 days of the date of the notice of assessment is mailed by the commission"). A-Fab contends, however, that the district court erred by concluding that it lacked subject matter jurisdiction despite A-Fab's failure to exhaust its administrative remedies. Specifically, A-Fab argues that the Assessments are void because the Commission "did not have jurisdiction to assess a tax on the Property." In other words, A-Fab asserts that the Assessments suffer from "jurisdictional" defects and that its

appeal to the district court can therefore "be raised at any time" and without exhausting administrative remedies. We disagree.

¶16   Utah's well-established body of relevant case law demonstrates that parties contesting whether they are subject to a tax or assessment must exhaust administrative remedies before seeking judicial review. *Nebeker*, 2001 UT 74, ¶ 14; *State Tax Comm'n v. Iverson*, 782 P.2d 519, 524 (Utah 1989); *Pacific Intermountain Express Co. v. State Tax Comm'n*, 316 P.2d 549, 551–52 (Utah 1957); *State Tax Comm'n v. Spanish Fork*, 100 P.2d 575, 577 (Utah 1940); *State Tax Comm'n v. J. & W. Auto Service*, 66 P.2d 141, 143 (Utah 1937); *see also Amax Magnesium Corp. v. Utah State Tax Comm'n*, 796 P.2d 1256, 1257–58 (Utah 1990) (reviewing a decision of the Commission); *Action TV v. County Board of Equalization of Salt Lake County*, 1999 UT App 231, ¶ 1, 986 P.2d 108 (same). As noted, A-Fab does not dispute that it failed to exhaust in this case—rather, it contends that it fits into an exception to the general rule.

¶17   This court has recognized an exception to the rule that a party must exhaust when "it appears that exhaustion would serve no useful purpose." *TDM, Inc. v. Tax Comm'n*, 2004 UT App 433, ¶ 4, 103 P.3d 190 (per curiam) (cleaned up). Exhaustion would serve no useful purpose when the issue being reviewed presents a "threshold legal issue that cannot be impacted or avoided by any turn the case may take before the Commission." *Id.* ¶ 6. For example, a controversy raising a purely constitutional question "with no alternative administrative basis that could resolve the issue" and no "administrative determination that could obviate the need to reach the constitutional issue" is not required to first be presented to the administrative body. *Id.*

¶18   However, "[e]xhaustion of administrative remedies is still required when the administrative proceeding may obviate the need to reach the constitutional [or other legal threshold] question." *Id.* ¶ 5. Because "[e]ven if the constitutional [or

threshold legal] issue is not avoided entirely, an administrative proceeding may be useful to better frame the issues before the court." *Id.* "In contrast, where purely legal questions are raised that cannot be finally determined in an administrative proceeding, the pursuit of the administrative proceeding may serve no purpose." *Id.*

¶19   A-Fab has not raised a constitutional issue, nor has it articulated a "threshold legal issue" that would render administrative review a waste. The crux of A-Fab's challenge is that the Commission lacked authority to assess and tax the Property. A-Fab argues that the Assessments are "illegal and void" because A-Fab is not a mining company, (citing Utah Code Ann. § 59-2-201(1)(vi) (LexisNexis 2018)[7] (authorizing the Commission to assess and tax "all machinery used in mining . . . that [is] primarily used by the owner of a mine . . . regardless of actual location")); and that in 2012 and 2013 the Property was "inventory held for sale in the ordinary course of business and thus was exempt from taxation," (citing *id.* § 59-2-1114(1) (providing an exemption for property "held for sale in the ordinary course of business")). These arguments fall short of demonstrating that exhaustion would serve no useful purpose.

¶20   As the Commission points out, A-Fab could have timely appealed the Assessments and argued that it was not a mine owner and that the Property was merely inventory. And if it had, the Commission might have agreed and there would be no need for judicial review.

¶21   Further, the record does not indicate that the Commission lacked authority "on its face" to assess the property. *See State Tax*

_____

7. Because the statutory provision in effect at the relevant time does not differ in any material way from that now in effect, we cite the current version of the Utah Code.

*Comm'n v. J. & W. Auto Service*, 66 P.2d 141, 143 (Utah 1937). Whether the Commission lacked authority "on its face" was visited in *J. & W. Auto Service* when a taxpayer argued that a sales tax assessment was void because the Commission "had no authority to tax interstate sales"—and, therefore, exhausting its claim with the Commission was not necessary. *Id.* at 142. Our supreme court disagreed, *id.* at 144, stating that even if the Commission "made an error as to certain [jurisdictional] facts and upon such error assumed to tax some sales it had no authority to tax," the Commission nonetheless has "jurisdiction over the general subject-matter of taxing sales." *Id.* at 143. Therefore, even if the Commission lacked authority to assess "some sales which it should really not have taxed," it does not follow that such a lack of authority was apparent on its face. *See id.*

¶22   Conversely, our supreme court has held that the Commission lacked jurisdiction on its face when a "constitutional challenge was the sole claim" at issue. *Nebeker v. Utah State Tax Comm'n*, 2001 UT 74, ¶ 24, 34 P.3d 180. The court in *Nebeker* elaborated that deciding constitutional issues is "not within the [Commission's] jurisdiction." *Id.*

¶23   Here, like in *J. & W. Auto Service*, the Commission did not lack authority on its face to tax the Property. First, the Commission reasonably believed it had the authority to assess the Property because A-Fab identified the Property as "subject to assessment by the State Tax Commission" on its 2012 and 2013 Returns. Second, but for the allegation that the Property was being held as inventory, the Property would have been subject to assessment by the Commission because it is mining equipment. *See* Utah Code Ann. § 59-2-201(1) (authorizing the Commission to assess and tax "all machinery used in mining . . . that [is] primarily used by the owner of a mine . . . regardless of actual location").

¶24 Whether the Commission should have taxed the Property is precisely the type of issue that could have, and should have, been brought before the Commission. Thus, A-Fab has failed to demonstrate that it was justified in bypassing the administrative appeal process—and therefore, the district court properly dismissed A-Fab's petition on the grounds that the court lacked subject matter jurisdiction.

## II. Equitable Tolling

¶25 Alternatively, A-Fab contends that the district court erred in concluding that equitable tolling did not apply as a matter of law. A-Fab raises a single argument in support of its contention: whether it received the Assessments is disputed, and therefore summary judgment should not have been granted. A-Fab argues that the Commission mailed the Assessments to its old address; and consequently A-Fab did not learn about the Assessments until 2016, when Carbon County mailed the delinquent tax notice. We find this argument unpersuasive for three reasons.

¶26 First, as the Commission points out, this disputed fact is immaterial because the time to appeal is triggered by the mailing of the assessment, not whether the assessment is received. *See* Utah Code Ann. § 59-2-1007(1)(a) (LexisNexis 2008). And even if this fact was material, A-Fab did not create a genuine dispute of this fact. The record indicates that A-Fab presented an affidavit claiming "it did not have any record of receiving" the Assessments. This affidavit only avers that A-Fab did not have a record of receipt, not that A-Fab did not indeed receive the Assessments. A-Fab has declined to address these points anywhere in the record or on appeal, and therefore, A-Fab's notice argument fails.

¶27 Second, it is undisputed that the Assessments were mailed to the address provided by A-Fab itself. The Returns filed in 2012 and 2013—which were prepared, signed, and dated by A-Fab—both list A-Fab's old address. The certified mail receipts

for those Returns also list A-Fab's old address. In other words, any mistake in the mailing address to which the Assessments were sent was invited by A-Fab. Accordingly, A-Fab is not excused from its alleged ignorance.

¶28 Finally, the record indicates that A-Fab was on notice of the Assessments. Attached to A-Fab's 2013 Return is a letter requesting that the Commission reconsider the value of the Property. This letter included an independent appraisal of the Property and urged the Tax Commission to reconsider its 2013 assessment of the value of the Property. Simply put, A-Fab could not ask for reconsideration of something it was not aware of. Thus, A-Fab has not demonstrated a dispute of material fact sufficient to preclude summary judgment, and therefore, the district court properly granted summary judgment in favor of the Commission.

## CONCLUSION

¶29 A-Fab failed to timely appeal the Assessments and therefore the district court properly dismissed A-Fab's petition for review for lack of subject matter jurisdiction. A-Fab also failed to demonstrate a dispute of material fact that would preclude summary judgment on the issue of whether the deadline to appeal should have been equitably tolled. Accordingly, we affirm.

———————