******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHICAGO TITLE INSURANCE COMPANY
*v.* ACCURATE TITLE SEARCHES, INC.
(AC 37869)

Sheldon, Prescott and Flynn, Js.

*Argued October 6, 2016—officially released May 30, 2017*

(Appeal from Superior Court, judicial district of
Hartford, Bright, J. [summary judgment motion]; Wiese,
J. [judgment])

*Anthony E. DeCrosta,* for the appellant-appellee
(defendant).

*Gerald L. Garlick,* for the appellee-appellant
(plaintiff).

*Opinion*

SHELDON, J. This is an action by the plaintiff, Chicago Title Insurance Company (Chicago Title), to recover damages from the defendant, Accurate Title Searches, Inc., for losses allegedly incurred by Ticor Title Insurance Company (Ticor Title), another title insurer with which the plaintiff later merged,[1] due to the defendant's negligence in performing a title search as to a parcel of real property in Hartford (property). In reliance upon that title search, Ticor Title issued a lender's title insurance policy (policy) for the property to NationOne Mortgage Company, Inc. (NationOne), a lender that took a note and mortgage on the property from Janice Flemming, in exchange for a $208,000 loan to finance her purchase of the property from its purported owner, Joseph M. Davis. The plaintiff incurred the losses here complained of in investigating and settling claims against NPL Investment Trust I (NPL Investment),[2] which had become an insured under the policy upon acquiring Flemming's note and mortgage from NationOne, by two entities claiming to have superior interests in the property to those of NPL Investment. One such claimant, Terry Road, LLC (Terry Road), allegedly acquired its superior interest in the property pursuant to a quitclaim deed from Davis dated February 22, 2006, which was recorded on the Hartford land records on April 21, 2006. The other claimant, Connecticut Attorneys Title Insurance Company (CATIC), allegedly acquired its superior interest in the property pursuant to a $500,000 attachment against Terry Road, which was recorded on the Hartford land records on September 10, 2009.

After moving successfully for summary judgment on the issue of the defendant's liability for negligence, the plaintiff presented two related claims for damages to compensate it for losses allegedly caused by such negligence, together with prejudgment interest on such damages pursuant to General Statutes § 37-3a, at two separate hearings in damages. At an initial hearing in damages, the plaintiff sought, and the trial court, *Wiese, J.*, awarded, $77,500 in damages to compensate it for all sums it paid to settle the claims of Terry Road and CATIC against NPL Investment. The court held that the amount of that settlement, which had been negotiated at arm's length at a judicial pretrial, was reasonable, and thus awarded it to the plaintiff as compensatory damages in this action. At a second hearing in damages, however, the same trial court, *Wiese, J.*, denied the plaintiff's additional claim for damages to compensate it for the attorney's fees and expenses it had incurred in investigating and resolving Terry Road's and CATIC's counterclaims against NPL Investment, and denied the plaintiff's claim for prejudgment interest on its earlier damages award under § 37-3a. The court based its rejection of the plaintiff's additional claim for damages upon

its understanding of the so-called American rule,[3] under which parties bringing civil actions to recover damages from alleged wrongdoers are generally required to pay their own attorney's fees and expenses to prosecute such actions. The court rejected the plaintiff's claim for prejudgment interest on its earlier damages award on the ground that that award was "an unliquidated sum [that was neither] already payable prejudgment nor wrongfully withheld."[4]

On appeal, the defendant claims that the trial court erred in awarding the plaintiff compensatory damages in the full amount of its settlement with Terry Road and CATIC, without first requiring the plaintiff to prove that NPL Investment was legally liable for, and thus required to pay the settling parties, that entire amount. This is so, claims the defendant, because the plaintiff's present claim sounds not in negligence but in common-law indemnification,[5] for which the plaintiff is only entitled to recover damages for payments to third parties which it was legally obligated to make. The defendant argues that where, as here, a party from which a plaintiff seeks indemnification for payment of an underlying claim is not given notice of or an opportunity to defend against that claim, the plaintiff, as would-be indemnitee, must prove not only that the amount it seeks to recover from the defendant, as alleged indemnitor, was a reasonable amount to settle the claim, but that the plaintiff was legally liable to pay the claimant that amount.

In its cross appeal, the plaintiff claims that the court erred in ruling that the American rule precluded the plaintiff from recovering, as an element of compensatory damages, the attorney's fees and expenses that it incurred to investigate and settle Terry Road's and CATIC's underlying claims against NPL Investment. That rule, it argues, only bars a plaintiff from recovering the attorney's fees and expenses it has incurred in the particular litigation in which such fees and costs are sought, not those incurred in previous actions that the plaintiff was forced to defend as a result of the defendant's negligence.

On the record before us, we agree with the trial court, *Bright, J.*, that the plaintiff's claim sounds in negligence, not in common-law identification, and thus that the defendant's arguments as to what proof is required to prevail on a claim for indemnification are inapplicable to this case. On the other hand, we disagree with the trial court, *Wiese, J.*, that the plaintiff's claim for damages to compensate it for the attorney's fees and expenses it incurred to defend its insured *in prior litigation* is barred *in this action* by the American rule. Accordingly, although we reverse the court's judgment denying the plaintiff's claim for compensatory damages in the amount of its prior attorney's fees and expenses and remand this case for further proceedings on that claim, we affirm the court's judgment in all other respects.

The following facts and procedural history are relevant to our disposition of this appeal. In May, 2004, Leroy R. McCalop was the record owner of the property located at 108–110 Webster Street in Hartford. On May 19, 2004, McCalop issued a general warranty deed (McCalop deed) which provided: "I, LEROY R. McCALOP of 1417 Stafford Avenue Bristol, Connecticut 06010 for consideration of TWO HUNDRED THOUSAND AND 00/100 ($200,000.00) DOLLARS received to my full satisfaction of JOSEPH M. DAVIS of 15 June Street, East Hartford Connecticut do give, grant, bargain, sell and confirm unto the said LEROY R. McCALOP . . . all that certain piece or parcel of land . . . situated in the Town of East Hartford, County of Hartford and State of Connecticut, known as 108–110 Webster Street . . . ."[6] That same day, Davis encumbered the property with two mortgages in the aggregate amount of $200,000. The McCalop deed and Davis' two mortgages were subsequently recorded on June 7, 2004. As recently as February 2, 2006, Davis was listed as the property's account holder for municipal utilities and taxes.

Approximately two years after the McCalop deed was executed, Davis purportedly conveyed the property, on two separate occasions, to two different parties. The first such conveyance took place on February 22, 2006, when Davis delivered a quitclaim deed for the property to Terry Road. This quitclaim deed was recorded on April 21, 2006. Thereafter, Terry Road encumbered the property with a $25,996 mortgage, which was recorded on May 17, 2006. Davis' second purported conveyance of the property took place on July 13, 2006, when he delivered a warranty deed for the property to Flemming for $260,000. As consideration for the loan, Flemming gave NationOne a note in the amount of $208,000 secured by a mortgage for the property. NationOne, in turn, applied for a lender's title insurance policy with respect to the property with the plaintiff's predecessor, Ticor Title.[7] In an effort to assess the quality of Davis' title to the property, Ticor Title requested two title searches with respect to the property.

On April 17, 2006, approximately two months after Davis' initial conveyance of the property by quitclaim deed to Terry Road, but four days before that deed was recorded, Ticor Title retained the defendant to perform its first title search with respect to the property. Ticor Title specified in its search order that it sought a "[f]ull ([forty plus] years)" search of the property, of which the "current owner" was listed as "Joseph Davis." Pursuant to this search order, the defendant conducted a title search with respect to the property and submitted a written report of its findings to "Patricia Kunz, [Ticor Title]." According to that report, the search covered the period starting on May 20, 1957, and ending on April 12, 2006, and revealed that the "most recent conveyance" of the property had been by warranty deed dated

May 19, 2004, from "Leroy R. McCalop," as "grantor," to "Joseph M. Davis or Leroy R. McCalop," as "grantee," which was recorded on June 7, 2004. Accordingly, although the author of the report noted that there was a "mistake in deed, in that it states consideration from Davis but conveys property to McCalop," the report concluded that the "present title holder" of the property was "Joseph M. Davis or Leroy R. McCalop." The report also noted Davis' two mortgages on the property, which had been recorded in June, 2004, and attached a printout listing Davis as the then current account holder on the property's municipal utility bills.

Approximately two months after the first title search, on June 13, 2006, the defendant conducted a second title search with respect to the property, also on behalf of Ticor Title. On this occasion, as on the first, the defendant purportedly conducted another "full forty year statutory search" with respect to the property, albeit for a longer period, from May 20, 1957, until June 13, 2006, which ended approximately two months *after* Terry Road's quitclaim deed and one month after its mortgage had been recorded on the Hartford land records. In the written report of its findings based upon this second title search, as in the earlier written report based upon its first title search, the defendant once again noted the apparent "mistake" in the McCalop deed as well as Davis' subsequently recorded mortgages on the property. Despite these indications as to Davis' possible title interest in the property, the defendant failed to investigate Davis' name in the grantor-grantee index. Consequently, the defendant never found, and the written report of its findings never mentioned, either Terry Road's quitclaim deed from Davis or its subsequent mortgage on the property, both of which were recorded several weeks before the listed ending date of the second title search. As a result of this omission, Ticor Title, NationOne, and Flemming were all unaware, at the time of Davis' purported conveyance of the property to Flemming, that Davis had previously transferred all of his interest in the property to Terry Road.

On July 6, 2006, one week before the conveyance from Davis to Flemming, McCalop issued a "corrective warranty deed," naming Davis as the intended grantee of the 2004 McCalop deed.[8] The following week, on July 13, 2006, Flemming obtained a mortgage from NationOne in the amount of $208,000. In conjunction with the Flemming mortgage, NationOne procured the policy from Ticor Title, which had agreed to insure it, as Flemming's mortgagee, in reliance upon the defendant's title search reports. That same day, Davis executed a warranty deed purporting to convey the property to Flemming in exchange for $260,000.

By March 18, 2008, Flemming had defaulted on her mortgage. Thereafter, the successor mortgagee, NPL Investment, commenced an action to foreclose on the

property and recorded a lis pendens[9] on the Hartford land records. On October 1, 2009, NPL Investment filed its amended complaint, alleging that Flemming had defaulted on her mortgage and that both Terry Road and CATIC held junior interests in the property.

After receiving notice of the pending action, both Terry Road and CATIC filed answers and counterclaims against NPL Investment and cross claims against Flemming and other defendants. The counterclaims and cross claims (hereinafter counterclaims) alleged that NPL Investment's mortgage was invalid because, by virtue of Terry Road's quitclaim deed from Davis, Davis had no legal interest in the property to convey to Flemming, and thus Flemming had no legal interest in the property when she obtained her mortgage from NationOne. In response to these allegations, NPL Investment filed a claim with the plaintiff[10] under the policy for $208,000, which was then the outstanding principal balance on Flemming's note.

After receiving NPL Investment's claim under the policy, the plaintiff reviewed the title search reports to assess the validity of CATIC's and Terry Road's counterclaims. Subsequent investigation revealed that the defendant's second title search report failed to disclose either Terry Road's quitclaim deed or its mortgage on the property, both of which had been recorded prior to June, 2006. On the basis of those findings, the plaintiff entered into negotiations with CATIC and Terry Road, on behalf of NPL Investment, in an effort to settle their counterclaims, and thus to resolve NPL Investment's claim under the policy. Although CATIC and Terry Road initially demanded $150,000 to settle their dispute with NPL Investment, the parties ultimately agreed to settle the matter for $77,500. Under the parties' settlement agreement, the plaintiff received a release of CATIC's interest in the property, a withdrawal of all legal claims by both CATIC and Terry Road, and a quitclaim deed from Terry Road to Flemming, which was issued on July 6, 2011. Thereafter, on July 21, 2011, the plaintiff issued a check in the amount of $77,500 to CATIC.

On March 5, 2012, plaintiff's counsel sent a demand letter to the defendant, seeking $77,500 in compensatory damages as well as compensation for all fees and expenses it had incurred in investigating and negotiating a settlement of the underlying claims against NPL Investment. Prior to receiving this demand letter, the defendant had not been notified of any alleged defects in its title search reports with respect to the property, the counterclaims brought against NPL Investment based upon alleged defects in Flemming's title to the property, or the plaintiff's negotiations with Terry Road and CATIC to settle those counterclaims.

On August 10, 2012, the plaintiff filed its one count operative complaint against the defendant in this action, alleging that the defendant had been negligent in con-

ducting its title search with respect to the property. Specifically, the plaintiff alleged that the defendant had a duty to exercise reasonable care in performing the title search, that it breached that duty by failing to investigate Davis' name in the grantor-grantee index, and that that breach had caused the plaintiff to suffer $77,500 in economic damages. On June 21, 2013, the plaintiff filed a motion for summary judgment as to the defendant's liability only. In response to that motion, the defendant filed a memorandum in opposition to summary judgment in which it claimed, inter alia, that it had not breached its duty of care, and that the plaintiff's failure to provide notice of the underlying counterclaims precluded the plaintiff from asserting an indemnification claim against the defendant. On December 19, 2013, the trial court, *Bright, J.*, granted the plaintiff's motion for summary judgment as to the defendant's liability. In its memorandum of decision, the court rejected the defendant's argument that this was an indemnification action and held that the plaintiff had demonstrated the absence of any genuine issue of material fact as to the defendant's negligence.

Thereafter, on October 2, 2014, the court, *Wiese, J.*, held an initial hearing in damages. In its memorandum of decision following that hearing, dated December 31, 2014, the court found that the plaintiff had satisfied its burden of proving, by a preponderance of the evidence, that it was reasonably entitled to recover $77,500 in economic damages to compensate it for all sums paid to settle the counterclaims of CATIC and Terry Road against NPL Investment. The court initially declined, however, to rule on the plaintiff's claims for damages for attorney's fees and expenses it had incurred to investigate and settle the claims against NPL Investment, and for prejudgment interest on the plaintiff's claims for damages.

A second hearing in damages was held on March 24, 2015, to address the latter claims for damages. Three days later, the court, *Wiese, J.*, issued a second memorandum of decision in which it held that the plaintiff was not entitled to prejudgment interest on its damages award and that, under the American rule, the plaintiff was not entitled to recover damages from the defendant in this action to compensate it for the attorney's fees and expenses it had incurred to investigate and negotiate a settlement in the earlier action. Thereafter, the defendant filed its appeal from the court's judgment and the plaintiff filed its cross appeal. Additional facts and procedural history will be set forth as necessary.

I

The defendant raises two arguments on appeal. The defendant first argues that, contrary to the holding of the trial court, *Bright, J.*, the plaintiff's complaint states a claim for common-law indemnification, and thus, consistent with the principles of indemnification law, the

plaintiff was obligated to notify the defendant of the counterclaims filed by Terry Road and CATIC prior to negotiating a settlement agreement. The defendant therefore argues that the plaintiff's failure to notify it of either the counterclaims or the plaintiff's settlement negotiations, until after the plaintiff was bound by the terms of the settlement agreement, precluded the plaintiff from relying merely on the reasonableness of its settlement agreement as the basis for awarding damages at the initial hearing in damages. Instead, the defendant argues, the plaintiff was required to prove the merits of CATIC's and Terry Road's counterclaims against NPL Investment and to establish the plaintiff's liability for those counterclaims in the amount it agreed to pay. In addition, in the last two pages of its brief to this court, the defendant raises, albeit without meaningful citation, a second argument that the court erred in granting summary judgment as to the defendant's liability because the McCalop deed did not convey a legal interest in the property to Davis, and thus that Terry Road never acquired such an interest in the property pursuant to its quitclaim deed from Davis. On that basis, the defendant argues in a cursory manner that summary judgment on the issue of liability should not have been granted by the trial court. We address each claim in turn.

A

We first address whether the plaintiff was obligated to notify the defendant either of the counterclaims of CATIC or Terry Road, or its settlement negotiations with those claimants and, if so, what effect, if any, its failure to give such notification had on the proof required of it to establish its entitlement to recover damages in the full amount it paid to settle that action. Dispositive of this analysis is the threshold issue of whether this is a claim for common-law indemnification, as the defendant has asserted, rather than a claim for negligence, as the plaintiff has consistently argued and the trial court ruled. Because the sole basis for the defendant's argument that the plaintiff bears a special burden of proof with respect to its liability for the underlying claims it settled and now seeks to be compensated for is its contention that this is a common-law indemnification claim, that argument must be rejected ab initio if the present claim does not sound in common-law indemnification. We conclude, for the following reasons, that the plaintiff's claim sounds in negligence, not in common-law indemnification, and thus that the defendant's first challenge to the trial court's judgment must be rejected.[11]

The following factual and procedural history is necessary to our resolution of this claim. The one count operative complaint was filed on August 10, 2012. In the second paragraph of the complaint, it was alleged that the "[d]efendant performed a title search and

issued a title report in preparation for a mortgage loan made by NationOne . . . to [Flemming] for her purchase of the property known as 108–110 Webster Street, Hartford, Connecticut . . . ." In the fourth paragraph of the complaint, it was alleged that "in conjunction with the Closing, NationOne purchased [the policy] from Ticor Title, *which . . . policy was issued in reliance on the title search* performed by [the] defendant." (Emphasis added.) In the sixth and seventh paragraphs of the complaint, the plaintiff alleged that "a claim was subsequently made that [Flemming] was not the record owner of the property" and, in response, the plaintiff "undertook to investigate the claim made under the [policy] issued by Ticor Title, and, in 2011 . . . incurred a loss by virtue of . . . paying $77,500 to resolve that claim." In the eighth and ninth paragraphs of the complaint, the plaintiff alleged that the defendant was negligent because, inter alia, the title search report did not reflect the Terry Road deed and "the defendant failed to exercise the degree of care, skill and/or diligence employed by title searchers practicing under similar circumstances."

We begin with our standard of review. "[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary." (Internal quotation marks omitted.) *Bross* v. *Hillside Acres, Inc.*, 92 Conn. App. 773, 778, 887 A.2d 420 (2006). "[W]e have long eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleadings with reference to the general theory upon which it proceeded, and to substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension. . . . [E]ssential allegations may not be supplied by conjecture or remote implication . . . ." (Internal quotation marks omitted.) *Stotler* v. *Dept. of Transportation*, 142 Conn. App. 826, 839, 70 A.3d 114 (2013), aff'd, 313 Conn. 158, 96 A.3d 527 (2014).

The defendant advances two arguments as to why this is a claim for common-law indemnification and why the plaintiff, therefore, was required to provide the defendant with timely notice of the underlying counterclaims. The defendant first argues that, on the basis of the facts presented, the plaintiff was passively negligent for its losses and, therefore, its theory of recovery must be that of common-law indemnification. Second, the defendant emphasizes that the plaintiff incurred losses

as a result of its liability to a third party and, therefore, the plaintiff's claim to recover such damages is the functional equivalent of a claim for indemnification. We address each argument in turn.

1

In support of its first argument as to why this is a claim of common-law indemnification, the defendant asserts that "it has long been recognized that negligence can form the basis of a claim for indemnification, if the negligence of the indemnitee is passive and the negligence of the indemnitor is active. . . . The plaintiff's claim is obviously a claim for indemnification based on active/passive negligence, and therefore the consequences of not providing notice of the underlying claim apply." (Citation omitted.) The plaintiff, however, argues that an action for common-law indemnification requires the presence of two tortfeasors, and thus, because it was not negligent, common-law indemnification is inapplicable to the facts of this case. The defendant counters that the plaintiff misconstrues the passive negligence requirement, and that "passive negligence specifically requires that a party not be negligent in any manner, rather that liability is imposed as an operation of law." We agree with the plaintiff.

"[A]n action for indemnification is one in which one party seeks reimbursement from another party for losses incurred in connection with the first party's liability to a third party." *Amoco Oil Co.* v. *Liberty Auto & Electric Co.*, 262 Conn. 142, 148, 810 A.2d 259 (2002). "[A] loss in the context of indemnity is the payment that discharges a liability." Id., 149. In the absence of an express contract for indemnification or statutory provisions authorizing actions for indemnification; see *Kyrtatas* v. *Stop & Shop, Inc.*, 205 Conn. 694, 698, 535 A.2d 357 (1988); a party may nonetheless assert an implied right to indemnification as a measure of restitution. See 41 Am. Jur. 2d 383–84, Indemnity § 1 (2015); see also 42 C.J.S. 144–45, Indemnity § 31 (2007). The theory of common-law indemnification is an implied right to indemnification and is considered a means of achieving restitution between the parties. Where a party seeks restitution in the form of common-law indemnification, several authorities agree that the party seeking indemnity and the party from whom indemnification is sought must be considered jointly and severally liable for the loss incurred by the putative indemnitee. See 42 C.J.S., supra, § 2, p. 98 ("[i]ndemnity applies only where there is an identical duty owed by one and discharged by another"); see also 42 C.J.S., supra, § 33, p. 149 ("[a] cause of action for implied indemnification requires a showing that the plaintiff and the defendant owed a duty to a third party, and that the plaintiff discharged the duty which, as between the plaintiff and the defendant, should have been discharged by the defendant"); 41 Am. Jur. 2d, supra, § 1, p. 383 ("[i]ndem-

nity requires that a common duty be mutually owed to a third party"); 1 Restatement (Third), Restitution and Unjust Enrichment, § 23, comment (d) (2011) ("A claim to indemnity or contribution arises when the claimant has discharged all or part of a joint obligation. A claim under this section is readily distinguished, therefore, from the similar claim that arises when A and B owe independent duties to a third party C; or when A, acting with adequate justification, renders a performance to C for which B would have been liable to C directly. . . . The restitution claim that arises from such transactions is . . . more often referred to as a claim to 'equitable subrogation.' ").

The consensus expressed by these authorities fully aligns with our jurisprudence concerning claims for common-law indemnification. The theory of common-law indemnification was first announced by our Supreme Court in the seminal case of *Kaplan* v. *Merberg Wrecking Corp.*, 152 Conn. 405, 207 A.2d 732 (1965), as an exception to the rule that "[o]rdinarily there is no right of indemnity or contribution between joint [tortfeasors]." Id., 412. The rationale for this exception is that "[w]here . . . one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to the injury." (Internal quotation marks omitted.) *Bristol* v. *Dickau Bus Co.*, 63 Conn. App. 770, 773, 779 A.2d 152 (2001). As a result of the decision in *Kaplan*, a third-party plaintiff who previously has been found liable in tort may assert an implied right to indemnity against another negligent party, provided that the plaintiff satisfies the four elements of *Kaplan*.[12]  In the fifty years since *Kaplan* was decided, our courts have repeatedly stated that the party asserting a claim for common-law indemnification must be found to be chargeable with some degree of negligence in the underlying action as a necessary predicate for sustaining such a claim.  See *Smith* v. *New Haven*, 258 Conn. 56, 66, 779 A.2d 104 (2001) (holding that "[t]he presence of two tortfeasors is thus required for a viable claim of indemnification under *Kaplan*: one, whose passive negligence resulted in a monetary recovery by the plaintiff; and a second, whose active negligence renders him liable to the first by way of reimbursement"); *Bristol* v. *Dickau Bus Co.*, supra, 775–76 (holding that "[a]s long as the plaintiffs were chargeable with *some* negligence . . . and as long as that negligence was not active or primary . . . the plaintiffs are not precluded from recovering under common-law indemnification" [emphasis in original]).

After conducting a comprehensive review of our case law, we agree with the plaintiff that the theory of common-law indemnification is inapplicable to the facts in

the present case. Our conclusion rests on the fact that the defendant has not presented evidence demonstrating that (1) the parties owed an identical duty to NPL Investment, the insured and original plaintiff in the underlying action; (2) the plaintiff's payment under the express terms of the policy discharged an obligation for which the plaintiff and the defendant were jointly and severally liable; or (3) the plaintiff's payment under the terms of the policy rendered it chargeable with some degree of negligence in the underlying action. See, e.g., *Smith* v. *New Haven*, supra, 258 Conn. 66. Contrary to the defendant's argument, the facts of this case demonstrate that the parties owed each other distinct and separate duties, that the plaintiff's fulfillment of its contractual duties to NPL Investment was not the discharge of a joint obligation, and that the plaintiff's compliance with its contractual obligation belies the suggestion that it was passively negligent for the losses that it incurred in settling the claim against NPL Investment. On the one hand, the defendant and the plaintiff entered into a contract under which the defendant agreed to conduct a title search with respect to the property. Under that contract, the defendant's liability was narrow, in that it could be held liable only if it either failed to perform the title search as promised or performed it in a negligent manner. Conversely, the plaintiff and its insured entered into a lender's title insurance policy, an agreement entirely distinct from the plaintiff's contract with the defendant. Under the terms of the policy, the plaintiff agreed to defend, indemnify, and hold harmless the lender in the event that the quality of the title underlying the mortgage was challenged. In this context, the plaintiff's contractual liability to its insured could be triggered by a number of potential issues unrelated to the adequacy of the defendant's title search. After it received notice that the mortgagee's interest in the collateral was jeopardized, the plaintiff took steps in fulfillment of its contractual obligations with its insured to investigate and resolve NPL Investment's claim, which required the plaintiff to spend $77,500 to remove a cloud on the property's title and obtain a release of the adverse claimants' counterclaims.

We are not persuaded that this course of conduct constitutes passive negligence in the underlying action; rather, these facts suggest that the plaintiff fully complied with its duties to investigate and defend claims that fell within the terms of the policy. Although we agree with the defendant that there are limited circumstances in which a party's passive negligence arises by operation of law, those circumstances do not apply to the present case.[13] Accordingly, the facts of the record presented do not support the defendant's argument that the plaintiff and the defendant owed an identical duty to NPL Investment, that the plaintiff's payment under the terms of the policy discharged a joint and several

obligation of the parties, or that the plaintiff's compliance with its contractual duties rendered it passively negligent in the underlying case.

## 2

The defendant next argues that because the plaintiff's loss resulted from its contractual liability to a third party, the plaintiff's attempt to offset its liability by recovering that amount from the defendant transforms its claim into a claim for common-law indemnification. Although we acknowledge that the plaintiff's recovery of such damages makes whole the plaintiff for its expenses, the remedial effect of the plaintiff's damages does not transform this action, ipso facto, into a claim for common-law indemnification. Indeed, the defendant fails to account for cases in which a plaintiff has asserted a claim of negligence against a defendant in order to recover damages incurred as a result of the plaintiff's legal liability to a third party. See, e.g., *Prokolkin* v. *General Motors Corp.*, 170 Conn. 289, 365 A.2d 1180 (1976); *Mallinson* v. *Black*, 41 Conn. App. 373, 675 A.2d 937 (1996); *Commonwealth Land Title Ins. Co.* v. *Close, Jensen & Miller, P.C.*, Superior Court, judicial district of Hartford, Docket No. CV-06-5003046-S (November 5, 2008) (46 Conn. L. Rptr. 602).

In *Prokolkin*, the plaintiff was involved in an automobile accident allegedly caused by his car's defective limited slip differential. *Prokolkin* v. *General Motors Corp.*, supra, 170 Conn. 291. Subsequent to the accident, but prior to filing the operative complaint, the plaintiff "paid certain sums of money to settle the claims of [his] passengers who suffered injuries in the same accident . . . ." Id., 290–91. The plaintiff claimed to have suffered "$12,000 for his personal injuries and $18,375 by way of indemnification." Id., 291. Thereafter, the plaintiff advanced three claims against the defendant: a claim for breach of an implied warranty, a claim of strict products liability, and a claim of negligence. "In each count of the amended complaint, the plaintiff sought relief for both personal injuries and indemnification for the sums paid by him in settlement of the suit brought against him by the passengers injured in his car . . . ." Id., 293. "Upon motion of the defendant, a summary judgment was rendered in its favor with respect to the plaintiff's personal injury claim on the negligence count on the ground that it was barred by [the applicable statute of limitations] . . . ." Id., 292. "[A]t trial, the court submitted only the third count of strict products liability to the jury but charged, without exception, that a verdict on this count would also determine the implied warranty count." Id., 293. After the jury returned a verdict for the plaintiff in the amount $18,375 for his claim of indemnification, the court granted the defendant's motion to set aside the verdict. Id., 302. The trial court then ordered "that there be a trial on the indemnification claim of the second count of the complaint sound-

ing in negligence . . . .” Id., 305.

On appeal in *Prokolkin*, the plaintiff argued that the trial court’s decision to set aside the verdict was erroneous. Id., 302. Our Supreme Court disagreed. The court first found that, although the defendant’s motion for summary judgment as to the plaintiff’s claim of negligence was granted as it related to the plaintiff’s claim for personal injury damages, the defendant had not challenged, and the court had not stricken, the plaintiff’s second claim of negligence seeking $18,375 in indemnification for the sums paid to settle his passenger’s claims. See id., 303. The court further found that the trial court failed to submit the plaintiff’s negligence claim seeking indemnification to the jury; it had only submitted the plaintiff’s claim of strict liability. Id. Because the Supreme Court found that the plaintiff’s claim of strict liability was barred by the statute of limitations, it found that the jury’s verdict had been properly set aside. Id., 301–302. The court, however, affirmed the trial court’s order “that there be a trial on the indemnification claim of the second count of the complaint sounding in negligence . . . .” Id., 305.

In *Commonwealth Land Title Ins. Co.*, the defendant Close, Jensen & Miller, P.C., a “well known civil engineering firm that has done extensive land surveying in Connecticut,” and defendant John H. Miller, certified a survey of two adjacent properties to the plaintiffs, two title insurance companies who, in reliance on those surveys, issued two owners title insurance policies to the owners of the respective properties. *Commonwealth Land Title Ins. Co.* v. *Close, Jensen & Miller, P.C.*, supra, 46 Conn. L. Rptr. 603. The first survey, performed by the engineering firm, certified that, “except as shown, there are no visible easements . . . no encroachments onto adjoining premises, streets or alleys by any of the said building structures or other improvements, and no encroachments on to said premises by building structures or other improvements situated on adjoining premises.” (Internal quotation marks omitted.) Id. The second survey, performed by Miller, certified that “there are no encroachments or projections on or over the property or on the rights of way or easements pertinent to the same by buildings or improvements erected on adjacent land.” (Internal quotation marks omitted.) Id. In actuality, however, “[t]he cement floor slabs of [one property] poured over the property line to [the neighboring property]. As a result, there were very irregular projections over the property line, in many places varying in the length from several inches to over nine inches. . . .

“When these encroachments were discovered, both plaintiffs’ insured made claims against the plaintiffs based on the title policies insuring against any defect, lien, or encumbrance on the titles of the subject properties. The plaintiff Commonwealth [Land Title Insurance

Company] paid to its insured . . . $98,336.30 and [the] plaintiff Fidelity [National Title Insurance Company] paid to its insured . . . $85,018.15." Id. The plaintiffs then brought claims of negligence against the defendants seeking "those amounts as damages against the defendants." Id. The trial court, *Hon. Robert Satter*, judge trial referee, held that "the defendants clearly owed a duty to the two plaintiffs because they certified the surveys *directly to the plaintiffs*. If there was a breach of that duty, causation occurred because plaintiffs relied on the survey to issue their title insurance policy. [The] plaintiffs suffered damages by paying their insureds for the very items plaintiffs insured against, namely any defect in or lien or encroachment on the title." (Emphasis added; internal quotation marks omitted.) Id., 604. The court further held that this was not a subrogation action, noting that "the plaintiffs are not standing in the shoes of their insureds with a derivative cause of action against the defendants. The plaintiffs have a direct action against the defendants based on the surveys being certified to them. In such an action, as in any negligence action, a tortfeasor is liable for all damages proximately caused by its negligence." (Internal quotation marks omitted.) Id., 605.

These cases demonstrate that where a plaintiff is owed a direct duty of care by a defendant who breaches such duty and renders the plaintiff legally liable to a third party, thereby causing the plaintiff to incur losses in discharging that liability, the plaintiff may assert a claim of negligence against the defendant and seek to recover those costs as compensatory damages. The mere fact that a plaintiff's damages arose in connection with its contractual liability to a third party does not relegate the plaintiff to a claim for common-law indemnification, especially where, as here, the plaintiff was not passively negligent for its losses. As an aside, a pedestrian who has been struck by a vehicle while walking in a crosswalk does not need to assert a claim of indemnification against the driver in order to recover those medical expenses for which the pedestrian becomes contractually liable. Indeed, those damages are categorized appropriately as economic damages that may be recovered in an action for negligence. As such, we are unpersuaded by the defendant's argument that the plaintiff's liability to a third party, by itself, transformed this negligence claim into a claim of common-law indemnification.

In light of the foregoing analysis, we conclude that the plaintiff's claim was not a claim for common-law indemnification. Rather, as the trial court, *Bright, J.*, correctly found, this is a claim of negligence. The defendant could not and did not explain adequately why it failed to investigate Davis' name in the grantor-grantee index during either its first or second title search of the property. In fact, the defendant conceded during oral argument to this court that its title search was

performed in a negligent manner. Had the defendant exercised reasonable care in performing its second title search, it would have discovered and its report would have notified the plaintiff of Terry Road's quitclaim deed and its subsequent mortgage on the property. Given the commercial nature of the plaintiff's business as an insurer, it was readily foreseeable to the defendant that, should its search be performed in a negligent manner, the plaintiff may be forced to expend money in investigating and settling claims brought pursuant to an insurance policy that the plaintiff had issued in reliance upon the accuracy of the defendant's title search reports. Thus, the plaintiff was entitled to recover, as compensatory damages, those sums reasonably spent in resolving the underlying counterclaims, all of which would not have been necessary had the defendant exercised reasonable care in performing its second title search.

The defendant offers no legal authority for the proposition that a plaintiff asserting a claim of negligence owes the putative defendant a duty to notify, or that its failure to provide such notice affects the applicable standard of proof during a subsequent hearing in damages. Accordingly, we reject the defendant's claims that the plaintiff's failure to provide timely notice to the defendant altered the applicable standard of proof and that the court, *Wiese, J.*, applied the incorrect standard of proof at the plaintiff's first hearing in damages.

B

The defendant's final argument, which accounts for less than two pages of its brief, is that the trial court erred in rendering summary judgment because the plaintiff's "entire claim rests on a [misinterpretation] of the [McCalop] deed . . . [and that] any attempt to change the result clearly stated requires assumptions based on facts not in evidence. . . . At the very least, evidence should be required before the plain meaning of the deed is reinterpreted." The defendant further argues that "if Davis had no title to convey to Terry Road, then [the] plaintiff had no legal obligation to pay the underlying claim, and therefore has no claim against the defendant . . . . Therefore, summary judgment should not have been entered against the defendant."

Notably, the defendant's brief is devoid of citation or authority regarding our review of a trial court's rendering of summary judgment; further, the defendant fails to articulate whether a genuine issue of material fact exists, thereby precluding the trial court's granting of summary judgment, and, if so, what evidence on record before the trial court affirmatively demonstrated the existence of such genuine issue. In light of these patent defects in the defendant's brief, we conclude that the defendant's second argument is inadequate for our review. "It is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere

abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.) *Tonghini* v. *Tonghini*, 152 Conn. App. 231, 239, 98 A.3d 93 (2014).

In any event, we note that even if this issue had been adequately briefed, the defendant's argument would fail on the merits. Our conclusion is supported by the fact that, during oral argument to this court, the defendant conceded that its title search was, in fact, performed in a negligent manner. Accordingly, even if this court construed the defendant's second argument in its broadest terms, our analysis would be limited to deciding whether, in light of the language of the 2004 McCalop deed conveying the property from McCalop to McCalop, Terry Road had a colorable claim of title against NPL Investment, and thus whether the defendant's negligence in failing to uncover the existence of the Terry Road quitclaim deed was a proximate cause of the plaintiff's loss. In this regard, we are reminded that the *defendant* submitted a copy of the corrective warranty deed issued from McCalop to Davis, dated July 6, 2006, together with its memorandum in opposition to the plaintiff's motion for summary judgment. Although the defendant argues in its brief that "any attempt to change the result clearly stated [in the McCalop deed] requires assumptions based on facts not in evidence," the defendant overlooks its own submission and the legal effect of the July, 2006 corrective warranty deed.

"A deed of confirmation may be appropriately utilized in order to remove doubts as to the operativeness of a prior deed to convey title to the land intended. . . . Where the name of one of the grantees is omitted, the omission may be cured by a subsequent deed incorporating the names of all the grantees in accordance with the intention of the parties." (Footnote omitted.) 23 Am. Jur. 2d 272–73, Deeds § 273 (2013). "A correction deed normally relates back to the date of the original deed, at least as between the parties to the deed. Thus, a second deed correcting the erroneous description contained in a former deed between the parties, as between them, relates back and becomes effective as of the date of the first deed." (Footnote omitted.) 26A C.J.S. 212, Deeds § 173 (2011). "[P]assage of title is considered by a fiction of law to relate back to the date of execution of the deed, provided no prejudice results to intervening equities."[14] Id., § 173, p. 212. Thus, as long as the original deed is not void for want of the necessary formalities, a corrective deed may be issued by the original grantor to more accurately reflect the intentions of the parties to the original deed and may be

issued to correct, among other things, the spelling or omission of an intended grantee's name. See, e.g., *Arnold Industries, Inc.* v. *Love*, 63 P.3d 721, 728 (Utah 2002); *Cox* v. *Tanner*, 229 S.C. 568, 574–76, 93 S.E.2d 905 (1956); *Golden* v. *Hayes*, 277 So. 2d 816, 817 (Fla. App. 1973).

A line-by-line comparison of the 2004 McCalop deed and the 2006 corrective deed reveals that both documents recite: the same operative date of conveyance, May 19, 2004; the same description of the parcel of land being conveyed; the same exchange of consideration; and the same general warranties. Indeed, the only differences between the two documents are that the corrective deed clarifies that the intended grantee of the 2004 conveyance was Davis, not McCalop, and that the property was located within the town of Hartford, not the town of East Hartford.[15] Accordingly, the July, 2006 corrective deed related back and became legally effective as of the original date of conveyance, May 19, 2004. Consequently, Davis' later transfer of the property by quitclaim deed to Terry Road constituted a valid transfer of his interest in the property. The defendant does not address the legal effects of the corrective deed in its brief, and otherwise fails to demonstrate the existence of any genuine issue of material fact as to the damages caused by its admitted negligence. Accordingly, we conclude, in the alternative, that the corrective deed renders the defendant's final argument meritless.

## II

On its cross appeal, the plaintiff claims that the trial court misinterpreted the American rule[16] and erroneously relied upon it to preclude an award of compensatory damages to the plaintiff for the attorney's fees and related expenses it incurred to investigate and negotiate a settlement of Terry Road's and CATIC's adverse claims of title to the property against the plaintiff's insured, NPL Investment. The defendant counters that the plaintiff's failure to notify it of such claims and its efforts to settle them precludes the plaintiff from recovering such attorney's fees and related expenses in this matter. We agree with the plaintiff.

The following additional facts are relevant to the resolution of this claim. After the trial court, *Bright, J.*, granted the plaintiff's motion for summary judgment as to the defendant's liability for negligence in performing the title search upon which its predecessor, Ticor Title, relied in issuing a lender's title insurance policy with respect to the property, the parties scheduled a hearing in damages for October 2, 2014. Following that hearing, the trial court, *Wiese, J.*, issued a written memorandum of decision, in which it ruled that the plaintiff had established its entitlement to recover $77,500 in damages to compensate it for all sums it had paid to CATIC to settle CATIC's and Terry Road's claims against NPL Investment. The trial court initially

declined, however, to rule on the plaintiff's claim for additional compensatory damages to compensate it for the attorney's fees and expenses that it had incurred to investigate and settle those claims. Instead, the parties agreed to address this issue at a second hearing in damages. Prior to the second hearing in damages, the plaintiff submitted an affidavit as to its attorney's fees and related expenses in the earlier litigation between NPL Investment and CATIC and Terry Road, which totaled $20,161.26.

Oral argument on the plaintiff's claim for additional compensatory damages was held on March 24, 2015. During oral argument, the defendant argued that, absent either a statute or a contractual provision to the contrary, the American rule precluded the plaintiff from recovering any of its attorney's fees or costs of litigation in this case. The plaintiff responded that its earlier attorney's fees and expenses were recoverable as compensatory damages because, like medical bills incurred to cure a physical injury resulting from a defendant's negligence, they were incurred to cure a legal harm resulting from the defendant's negligence. The plaintiff sought to distinguish between the legal fees and costs it incurred during its settlement negotiations with CATIC and Terry Road on the underlying claim against NPL Investment and the legal fees and costs it incurred in bringing the present action against the defendant, emphasizing that it was seeking to recover only the former. On those grounds, the plaintiff argued that damages it sought here for its prior attorney's fees and expenses were elements of compensatory damages, which, because they were incurred in a different legal proceeding, were not barred by the American rule.

The trial court, *Wiese, J.*, disagreed. In its second memorandum of decision, the trial court held that there was no statutory authority or contractual term that permitted the plaintiff to recover attorney's fees in this action. The court further held that it was unable to find any case law to support the plaintiff's position that attorney's fees may be considered a measure of compensatory damages under the facts of this case. On those grounds, the trial court held that the American rule barred the plaintiff's claim for additional compensatory damages in this action.

On appeal, the plaintiff claims that the trial court misinterpreted the scope of the American rule and improperly applied it to reject the plaintiff's claim for compensatory damages in the amount of the attorney's fees and expenses it incurred to investigate and settle the claims of Terry Road and CATIC against NPL Investment as a result of the defendant's negligence. The defendant argues that a party seeking common-law indemnification is precluded from seeking attorney's fees and expenses where the party has failed to notify the defendant of the underlying action.[17] We agree with

the plaintiff.

We begin with our standard or review. Ordinarily, "we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award." (Internal quotation marks omitted.) *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 582, 923 A.2d 697 (2007). "When, however, a damages award is challenged on the basis of a question of law, our review is plenary." *Motherway* v. *Geary*, 82 Conn. App. 722, 726, 846 A.2d 909 (2004). The plaintiff alleges that the trial court misinterpreted the American rule when it denied the plaintiff's request for attorney's fees. As such, the plaintiff's claim presents a question of law, as to which our review is plenary.

"The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . This rule is generally followed throughout the country . . . [and] Connecticut adheres to the American rule." (Internal quotation marks omitted.) *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, supra, 282 Conn. 582. There are, however, several recognized exceptions to this rule. Id., 582, 592–93 (noting that claims of vexatious litigation and an insurer's bad faith refusal to defend fall outside the purview of the American rule); see also *Mangiante* v. *Niemiec*, 98 Conn. App. 567, 570–72, 910 A.2d 235 (2006) (recognizing certain "limited equitable exceptions to the American rule," and permitting beneficiary to recover attorney's fees incurred in action against trustee for self-dealing). With regard to expenses incurred in separate legal proceedings, our Supreme Court has stated that "[t]here is substantial authority . . . that attorney's fees incurred in other litigation against a third party, which are awarded as an element of compensatory damages, do not fall within the contemplation of the American [r]ule." *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 97 n.31, 952 A.2d 1 (2008); see also 1 D. Dobbs, Remedies (2d Ed. 1993) § 3.10 (3) ("It is commonly stated as a rule that when the defendant's breach of duty to the plaintiff involves the plaintiff in litigation with third parties, the defendant is held liable for the costs of that litigation, including attorney's fees. . . . The fact that the plaintiff himself initiates the litigation with third persons . . . does not preclude recovery, so long as the plaintiff is acting reasonably to protect interests put in doubt or jeopardy by the defendant's breach of duty." [Footnote omitted.]). This approach fully comports with the purpose of the American rule, which is to encourage parties to litigate claims in good faith without fear that the losing party will ultimately shoulder the legal expenses incurred by the prevailing party in *the same action*. See *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*,

supra, 592.

In this case, the plaintiff is seeking to recover only those attorney's fees and expenses that it incurred during its settlement negotiations with Terry Road and CATIC, in an action entirely distinct from the present case. An award of such attorney's fees and expenses would not discourage parties from litigating their present claims in good faith, and thus an award of this nature would not undermine the policy of the American rule. We further agree with the plaintiff that an award of these damages would merely return the plaintiff to same position it would have occupied absent the defendant's negligence and, as such, these damages are compensatory in nature. See id.; see also *Chapman Lumber, Inc.* v. *Tager*, supra, 288 Conn. 97 n.31 (rejecting defendant's argument that "the court improperly allowed the jury to consider the costs of collection expended by the plaintiff . . . [in a prior proceeding] as an element of damages"). Accordingly, we conclude, on the facts here presented, that the trial court erred in holding that the plaintiff was barred by the American rule from recovering additional compensatory damages for the fees and costs it reasonably incurred in an earlier action to defend its insured against claims by third parties, arising from the defendant's negligence in conducting a title search, that they had superior title to Flemming's property.[18]

The judgment is reversed only as to the award of damages for attorney's fees and related litigation expenses, and the case is remanded for a further hearing in damages on that issue; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The plaintiff, Chicago Title, merged with its predecessor, Ticor Title, prior to June 21, 2011.

[2] At an unspecified date between July 13, 2006, and March 18, 2008, Flemming's mortgage was assigned to NPL Investment.

[3] "The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." (Internal quotation marks omitted.) *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 582, 923 A.2d 697 (2007).

[4] The plaintiff has not appealed the trial court's denial of its claim for prejudgment interest.

[5] In its motion to reargue, dated January 8, 2014, the defendant argued, inter alia, that the trial court erroneously failed to analyze the plaintiff's claim as a claim for an implied contract of indemnity. See *Seismograph Service (England), Ltd.* v. *Bolt Associates, Inc.*, 8 Conn. App. 446, 453, 513 A.2d 180 (1986); see also *Sendroff* v. *Food Mart of Connecticut, Inc.*, 34 Conn. Supp. 624, 626, 381 A.2d 565 (1977). Although the defendant's reply brief refers to this legal theory, it failed to adequately raise this issue in its main brief. "Because the defendant failed to raise this issue in his main brief, it is abandoned." *State* v. *Richardson*, 291 Conn. 426, 431, 969 A.2d 166 (2009). Accordingly, our analysis is limited to the applicability of the theory of common-law indemnification to the facts presented this case.

[6] See footnote 8 of this opinion, noting that the McCalop deed was later corrected to reflect, inter alia, that the property is located in Hartford.

[7] Subsequent to the issuance of the policy but prior to the investigation of the disputed claim, Ticor Title merged with and was succeeded by the plaintiff, Chicago Title. See footnote 1 of this opinion.

[8] The corrective deed, which was signed on July 6, 2006, stated, inter alia:

"I, LEROY R. McCALOP of 1417 Stafford Avenue, Bristol, Connecticut 06010 for consideration of TWO HUNDRED THOUSAND AND 00/100 ($200,000.00) DOLLARS received to my full satisfaction of JOSEPH M. DAVIS of 15 June Street, East Hartford, Connecticut do give, grant, bargain, sell and confirm unto the said JOSEPH M. DAVIS . . . all that certain piece or parcel of land . . . situated in the Town of Hartford, County of Hartford and State of Connecticut, known as 108–110 Webster Street . . . . IN WITNESS WHEREOF, we have hereunto set our hands and seals this 19th day of May, 2004." Notably, the grantee's name was changed from Leroy R. McCalop to Joseph M. Davis, and further, the property's description was changed from "Town of East Hartford, Connecticut" to "Town of Hartford, Connecticut." The deeds were identical in every other respect.

[9] "Generally, a notice of lis pendens is simply a notice that, when properly recorded, warns third parties, such as prospective purchasers, that the title to the property is in litigation . . . . In a foreclosure of a . . . lien . . . the lis pendens does not create an interest that is separate and distinct from the underlying interest being foreclosed. The sole purpose of the lis pendens in such an action is to give constructive notice to persons who may subsequently acquire an interest in the property, and cause them to be bound by the proceedings." (Citations omitted; internal quotation marks omitted.) *Ghent* v. *Meadowhaven Condominium, Inc.*, 77 Conn. App. 276, 284–85, 823 A.2d 355 (2003).

[10] As previously stated, the record does not reveal when Chicago Title merged with Ticor Title. See footnote 7 of this opinion. The record shows, however, that the plaintiff, Chicago Title, was the entity that conducted the investigation into CATIC's and Terry Road's counterclaims. For ease of reading, we refer to both Ticor Title and Chicago Title as the plaintiff henceforth.

[11] Because we conclude that common-law indemnification is inapplicable to this case, we need not address the issue of whether a party seeking common-law indemnification is required to provide notice of the underlying action, or whether a failure to do so requires the indemnitee to prove its actual liability for the underlying damages.

[12] Under *Kaplan*, "a [plaintiff] seeking indemnification must establish that: (1) the third party against whom indemnification is sought was negligent; (2) the third party's active negligence, rather than the [plaintiff's] own passive negligence, was the direct, immediate cause of the accident and the resulting harm; (3) the third party was in control of the situation to the exclusion of the [plaintiff] seeking reimbursement; and (4) the [plaintiff] did not know of the third party's negligence, had no reason to anticipate it, and reasonably could rely on the third party not to be negligent." (Footnote omitted.) *Valente* v. *Securitas Security Services, USA, Inc.*, 152 Conn. App. 196, 204, 96 A.3d 1275 (2014).

[13] There are several circumstances where an indemnitee's passive negligence may arise as a matter of law. See, e.g., *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 699–700, 694 A.2d 788 (1997); *Bristol* v. *Dickau Bus Co.*, supra, 63 Conn. App. 774; *Gianquitti* v. *Sheppard*, 53 Conn. App. 72, 74–75, 78–79, 728 A.2d 1133 (1999). These circumstances, however, arise where: (1) by virtue of a special relationship, the indemnitee is found to have owed and breached a special duty of care to the original plaintiff; see *Skuzinski* v. *Bouchard Fuels, Inc.*, supra, 704–706 (holding that the third-party defendant, as a business owner, owed the original plaintiff, its customer, a duty to maintain and clean the sidewalks but that, on the basis of the facts alleged, no reasonable juror could find that the business owner exercised exclusive control over the public street where the customer was struck by the third-party plaintiff's truck); or (2) by virtue of a special relationship, the indemnitee is held vicariously liable for the indemnitor's negligent conduct. See, e.g., *Bristol* v. *Dickau Bus Co.*, supra, 774 (holding that passive negligence "encompasses parties who were allegedly negligent in their management or supervision of others and thus financially responsible for the active negligence of the others"); *Gianquitti* v. *Sheppard*, supra, 74–75, 78–80 (commercial lessee deemed passively negligent for injury sustained by lessee's employee on leased premises). Neither circumstance, however, is implicated by the facts of this case. We thus find no support for the defendant's argument that the plaintiff's passive negligence arose as a matter of law.

[14] Although the relevant authorities and case law qualify that corrective deeds may not relate back when a third party's interest is prejudiced, we are reminded that the only third party interest implicated by the corrective deed was held by Terry Road. It cannot be argued that they were prejudiced

by the operation of such correction, as this deed, in effect, validated and affirmed their title pursuant to the quitclaim deed.

[15] See footnote 8 of this opinion.

[16] See footnote 3 of this opinion.

[17] The defendant cites *Gianquitti* v. *Sheppard*, supra, 53 Conn. App. 81–82, for the proposition that this court has considered whether a plaintiff seeking common-law indemnification must give notice of the prior action and whether a failure to do so disallows the recovery of attorney's fees. Because we conclude that common-law indemnification is inapplicable to this case; see part I of this opinion; we conclude that the defendant's reliance on *Gianquitti* is misplaced.

[18] We construe, as do the parties, the trial court's rejection, under the American rule, of the plaintiff's claim for additional compensatory damages in this action, to apply equally to expenses incurred for attorney's fees and for related litigation expenses. Although the court mentioned only attorney's fees in its second memorandum of decision, the parties have consistently discussed both parts of the plaintiff's claim together, both in the trial court and before this court on appeal.