******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## GHP MEDIA, INC. *v.* TANYA HUGHES ET AL.
## (AC 44921)

Alvord, Suarez and Seeley, Js.

*Syllabus*

The plaintiff, G Co., a printing company, sought to recover damages from the defendants T Co., a rival printing company, and H, a former employee of G Co., in connection with H's alleged theft and use of G Co.'s trade secret information and other intellectual property for the benefit of T Co. H, as an employee of G Co., had access to confidential, proprietary, and trade secret information belonging to G Co. When H became an employee of T Co., while she was still employed by G Co., she allegedly brought documents belonging to G Co. to her office at T Co. and used the information therein to solicit and divert customers from G Co. to T Co. After G Co. commenced the action, T Co. filed a third-party complaint against the third-party defendants, R and L, both officers of G Co., for indemnification. T Co. alleged, inter alia, that R and L had a duty to preserve the confidentiality of G Co.'s assets, and that R and L breached their duties as officers of G Co. because they had authorized H to work from home and to have access to the sensitive information at issue. The trial court granted R and L's motion to strike T Co.'s third-party complaint, from which T. Co. appealed to this court. *Held* that the trial court properly granted R and L's motion to strike T Co.'s revised third-party complaint, as T Co. could not prevail on its claim that it was entitled to indemnification for T Co.'s alleged use of G Co.'s stolen confidential information because R and L did not undertake reasonable efforts to prevent H from stealing G Co.'s confidential information; moreover, to the extent that R and L owed G Co. a fiduciary duty to protect its confidential information, that duty was entirely different from H's duty not to steal G Co.'s confidential information, as well as T Co.'s duty not to use that confidential information once it became aware that such information had been stolen.

Argued October 18, 2023—officially released June 11, 2024

*Procedural History*

Action to recover damages for, inter alia, tortious interference with contract, brought to the Superior Court in the judicial district of Ansonia-Milford, where the court, *Brown, J.*, granted the plaintiff's motion to cite in Reza Shafii as a party defendant; thereafter, the court, *Hon. Arthur A. Hiller*, judge trial referee, granted

the motion of the defendant Shafiis', Inc., to file a third-party complaint; subsequently, the court, *Hon. Arthur A. Hiller*, judge trial referee, granted the third-party defendants' motion to strike the third-party plaintiff's revised complaint; thereafter, the court, *Hon. Arthur A. Hiller*, judge trial referee, granted the third-party plaintiff's motion for judgment and rendered judgment thereon, from which the third-party plaintiff appealed to this court. *Affirmed.*

*John-Henry M. Steele*, for the appellant (defendant/third-party plaintiff Shafiis', Inc.).

*Andrew A. Cohen*, for the appellees (third-party defendant John Robinson et al.).

*Opinion*

SUAREZ, J. The defendant and third-party plaintiff, Shafiis', Inc., doing business as TigerPress (TigerPress),[1] appeals from the judgment of the trial court rendered in favor of the third-party defendants, John Robinson and Joseph LaValla, both officers of the plaintiff, GHP Media, Inc. (GHP),[2] after it granted their motion to strike TigerPress' revised third-party complaint for indemnification. On appeal, TigerPress claims that the court, in granting the third-party defendants' motion to strike, improperly concluded that its revised third-party complaint failed to allege that TigerPress, Robinson, and LaValla owed an identical duty to GHP in the underlying action. We affirm the judgment of the trial court.

---

[1] TigerPress and Tanya Hughes were named as the original defendants in the underlying action. On January 7, 2019, the plaintiff, GHP Media, Inc., filed a motion to cite in Reza Shafii, the president of TigerPress, as a defendant in the underlying action. On March 15, 2019, the court, *Brown, J.*, granted GHP Media, Inc.'s motion.

[2] It is undisputed that Robinson is an owner and officer of GHP. It is also undisputed that LaValla is currently an officer of GHP, and that both Robinson and LaValla were supervisors of the defendant Tanya Hughes and Jennifer Wallace when they were employees of GHP.

The following procedural history is relevant to this appeal. GHP commenced the underlying action against TigerPress and the defendant Tanya Hughes in September, 2017. In its June 10, 2020 amended complaint, GHP alleged the following facts. On June 7, 2017, GHP purchased all the assets of a commercial printing company known as Integrity Graphics (Integrity).[3] At the time of the sale, Hughes was an employee of Integrity. From July 10 to 19, 2017, following the sale of Integrity, Hughes was employed by GHP as a sales consultant. On July 12, 2017, Hughes, as a new employee of GHP, signed an acknowledgment for the receipt of GHP's employee handbook. The employee handbook included a confidentiality policy, which stated that GHP's intellectual property could not be used or disclosed by the employee after his or her engagement with the company ended. During her time as an employee of GHP, Hughes took home thousands of documents containing confidential, proprietary, and trade secret information belonging to GHP. Hughes understood that she was allowed to take these documents home because she was an employee of GHP and was permitted to use them solely for GHP's purposes.

On July 17, 2017, Hughes became a paid employee of TigerPress, a direct competitor of GHP, while she was still employed by GHP. On July 19, 2017, Hughes informed GHP that she was resigning from her employment at GHP to work for TigerPress. After becoming an employee of TigerPress, Hughes brought GHP's documents to her office at TigerPress and stored them in her filing cabinet. In addition, Hughes and TigerPress took possession of another set of customer files belonging to GHP, which files purportedly were taken by another former GHP employee, Jennifer Wallace, who also became an employee of TigerPress in July, 2017.

---

[3] It is undisputed that LaValla was the owner and officer of Integrity.

Wallace left the employment of TigerPress in September, 2017. Following Wallace's departure from her employment at TigerPress, Hughes was instructed to take over the files left by Wallace. Hughes then incorporated Wallace's files into her own files. Hughes used these files to solicit and divert customers from GHP to TigerPress, and she continued to use the confidential information in her capacity as an employee of TigerPress. TigerPress also participated in the diversion of customers and business from GHP to itself by using the confidential information at issue.

In its amended complaint, which consists of twenty-two counts, GHP set forth causes of action against Hughes, TigerPress, and Reza Shafii sounding in, inter alia, tortious interference with contract, tortious interference with business relationships, computer offenses in violation of General Statutes §§ 53a-251 (e) (1) and (2)[4] and 52-570b,[5] conversion, civil theft, and violations of the Connecticut Uniform Trade Secrets Act (CUTSA), General Statutes § 35-50 et seq., and the Connecticut

[4] General Statutes § 53a-251 defines various computer crimes. Section 53a-251 (e) provides in relevant part: "Misuse of computer system information. A person is guilty of the computer crime of misuse of computer system information when: (1) As a result of his accessing . . . a computer system, he intentionally makes or causes to be made an unauthorized display, use, disclosure or copy, in any form, of data residing in, communicated by or produced by a computer system; or (2) he intentionally or recklessly and without authorization (A) alters, deletes, tampers with, damages, destroys or takes data intended for use by a computer system, whether residing within or external to a computer system, or (B) intercepts or adds data to data residing within a computer system . . . ."

[5] General Statutes § 52-570b establishes a cause of action for computer related offenses. Section 52-570b provides in relevant part: "(a) Any aggrieved person who has reason to believe that any other person has been engaged, is engaged or is about to engage in an alleged violation of any provision of section 53a-251 may bring an action against such person and may apply to the Superior Court for: (1) An order temporarily or permanently restraining and enjoining the commencement or continuance of such act or acts; (2) an order directing restitution; or (3) an order directing the appointment of a receiver. . . ."

Unfair Trade Practices Act, General Statutes § 42-110b et seq. Out of the twenty-two counts brought against Hughes, TigerPress, and Shafii, only count one of the amended complaint alleged a breach of the duty of loyalty. Specifically, GHP alleged that Hughes, "[a]s an agent of GHP . . . had a duty to act in good faith, loyalty, and honesty toward her employer. . . . The solicitation and diversion of business by [Hughes], during her paid employment by GHP, and her use of GHP's time and resources to pursue her own business interests, on behalf of a direct competitor, was a violation of that duty." On December 12, 2018, TigerPress filed an answer admitting to some of the allegations in the complaint, denying some of the allegations, and asserting the special defense of waiver, disclosure, unclean hands, and nonjusticiability.[6] On December 17, 2018, Hughes also filed an answer denying all of the material allegations and adopting the special defenses in TigerPress' answer.[7]

On September 12, 2019, TigerPress moved, pursuant to General Statutes § 52-102a,[8] for permission to serve a third-party complaint for indemnification on Robinson and LaValla. On November 4, 2019, the court, *Hon. Arthur A. Hiller*, judge trial referee, granted TigerPress' motion. On December 6, 2019, TigerPress filed a third-party complaint, subsequently revised on February 3,

[6] On January 16, 2020, Shafii filed a separate answer in which he admitted to some of the allegations in the amended complaint, denied some of the allegations, and asserted the same special defenses as those asserted by TigerPress.

[7] On January 22, 2019, Hughes filed a revised answer admitting some of the allegations in the plaintiff's complaint.

[8] General Statutes § 52-102a provides in relevant part: "(a) A defendant in any civil action may move the court for permission as a third-party plaintiff to serve a writ, summons and complaint upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. The motion may be filed at any time before trial and permission may be granted by the court if, in its discretion, it deems that the granting of the motion will not unduly delay the trial of the action nor work an injustice upon the plaintiff or the party sought to be impleaded. . . ."

2020 (revised third-party complaint), against Robinson and LaValla for indemnification. In its revised third-party complaint, TigerPress alleged that, "[i]n its [amended] complaint, GHP purportedly claims that it has sustained damages as a consequence of the alleged wrongful conduct of . . . Hughes and [TigerPress], arising from . . . Hughes and [TigerPress'] alleged breach of duties to preserve the confidentiality of certain GHP assets, intellectual property, trade information, and alleged extremely confidential, proprietary, and trade secret documents and customer files." Although TigerPress denied the existence of such purported duties, it alleged that, "if such duties exist . . . it is Robinson [and LaValla], as [officers] . . . of GHP, who had a duty to preserve the confidentiality of the alleged GHP assets, intellectual property, trade information, and claimed extremely confidential, proprietary, and trade secret documents and customer files." TigerPress further alleged that Robinson and LaValla breached their duty to preserve the confidentiality of GHP's assets by authorizing Hughes to work from home and allowing her to take trade secret information to her house. Specifically, TigerPress alleged that, "[d]espite the existence of [their] fiduciary duty to preserve GHP's alleged assets, intellectual property, trade information, and trade secrets that Robinson [and LaValla] owed to GHP . . . Robinson authorized . . . Hughes to work from home . . . . Similarly, even though Robinson [and LaValla] knew that . . . Hughes, while working from home, must have had in her possession the kind of information [they] now [claim] is GHP's alleged assets, intellectual property, trade information, and trade secrets, when . . . Hughes gave her notice that she was terminating her employment and going to work for an entity that Robinson [and LaValla] knew was a direct competitor of GHP . . . [they] . . . did not ask or direct anyone else to ask . . . Hughes if she had any

customer files or other documents or information . . . [or] demand or direct anyone else to demand that . . . Hughes return [the] customer files or other documents or information that GHP now claims are its . . . extremely confidential, proprietary and trade secret documents/customer files . . . ."

On May 14, 2020, Robinson and LaValla filed a motion to strike the revised third-party complaint, arguing that TigerPress failed to allege therein that "[TigerPress], on [the] one hand, and [Robinson] and [LaValla], on the other, owe identical duties to [GHP], for which they are jointly and severally liable." On May 14, 2020, Robinson and LaValla filed a memorandum of law in support of their motion to strike TigerPress' revised third-party complaint. In their memorandum of law, Robinson and LaValla argued that TigerPress' revised third-party complaint "does not set forth any facts showing that [TigerPress] has any joint obligation or identical duties with [Robinson] and [LaValla]. . . . [Robinson] and [LaValla] have independent legal relationships with, and consequent duties to, their own company, [GHP]. Specifically, [Robinson], as an officer and owner of [GHP], had a fiduciary duty to preserve the confidentiality of his own company's assets. . . . [LaValla] had the same duty. . . . But this cannot possibly constitute identical duties with [TigerPress] as to [GHP], for which [Robinson] and [LaValla] are jointly and severally liable." On July 17, 2020, TigerPress filed a memorandum of law in opposition to the motion to strike its revised third-party complaint. In its memorandum of law, TigerPress contended that "[t]he allegations in the third-party complaint demonstrate that, if [GHP] sustained any injuries here, which is denied, the fault lies with GHP's owner, [Robinson], and one of GHP's corporate officers, [LaValla], for their failure to preserve the alleged confidential, trade secret nature of this information. . . . This is the identical duty that [GHP] alleges that [Hughes] and [TigerPress] violated."

On December 18, 2020, the court issued a memorandum of decision in which it granted Robinson and LaValla's motion to strike TigerPress' revised third-party complaint. In its memorandum of decision, the court relied on this court's decision in *Chicago Title Ins. Co.* v. *Accurate Title Searches, Inc.*, 173 Conn. App. 463, 481, 164 A.3d 682 (2017), for the legal principle that, "[t]o assert a common-law indemnity claim, the asserting party must show that both parties had an identical duty to the third party and that both parties are jointly and severally liable for the loss incurred." The trial court stated that officers owe fiduciary duties to their corporations, including a duty of loyalty. Furthermore, a duty of loyalty encompasses the duty not to disclose confidential information. The court concluded that "[TigerPress] has alleged that [the duty to not disclose confidential information] is the duty breached by [Robinson and LaValla]. . . . [TigerPress] does not owe [GHP] this duty, as it is a competing corporation. It is therefore precluded from asserting an indemnity claim against [Robinson and LaValla] because it does not allege an identical duty with [them] that caused the losses incurred by [GHP]."

On January 7, 2021, TigerPress filed a motion to reargue in which it agreed with the court's conclusion that it owed no duty to preserve the confidential information of GHP, as it is a competing corporation, but asserted that GHP has also alleged that TigerPress is liable for violating GHP's rights under certain provisions of CUTSA, namely, § 35-51 (b) (1) and (2) (B) (iii).[9] In

---

[9] General Statutes § 35-51 (b) provides in relevant part: " 'Misappropriation' means: (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without express consent by a person who . . . (B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use . . . ."

particular, TigerPress argued that its liability "is claimed by [GHP] here to be derived from [Hughes] and [Wallace], whom [GHP] claims owed [it] a duty to maintain the secrecy and limit the use of its alleged trade secrets." On February 18, 2021, the court issued a memorandum of decision on TigerPress' motion to reargue, denying the motion. In its memorandum of decision, the court reasoned that the analysis and conclusion in its December 18, 2020 memorandum of decision applies equally to TigerPress' CUTSA argument. Specifically, the court stated that "CUTSA does not define an identical duty for which the third-party plaintiff and [third-party] defendants are jointly and severally liable to [GHP]. The language in clause (iii) does not explicitly define any duty, much less an identical one. It simply refers to the person who owes a duty: 'derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.' As the duty is not defined in the statute, it must arise from elsewhere. Consequently, even if [Robinson and LaValla] could be jointly liable with [TigerPress] under the statute, their duty would be the very duty of loyalty alleged in the indemnification claim, which the court already has held to be distinct from [TigerPress'] duty."

On March 5, 2021, TigerPress appealed from the court's decision granting the third-party defendants' motion to strike and from the denial of TigerPress' motion to reargue. That appeal was docketed under AC 44563. On July 29, 2021, this court ordered, sua sponte, that the parties file memoranda addressing why the appeal should not be dismissed for lack of a final judgment. See *Pellecchia* v. *Connecticut Light & Power Co.*, 139 Conn. App. 88, 90–91, 54 A.3d 658 (2012) ("[t]he granting of a motion to strike . . . ordinarily is not a final judgment because our rules of practice afford a party a right to amend deficient pleadings" (internal quotation marks omitted)), cert. denied, 307 Conn. 950,

60 A.3d 740 (2013). On August 25, 2021, TigerPress filed a motion for judgment on its third-party complaint. On August 26, 2021, the trial court rendered judgment on the third-party complaint in favor of Robinson and LaValla. On August 30, 2021, TigerPress filed the present appeal from the court's December 18, 2020 judgment granting the third-party defendants' motion to strike. That appeal was docketed under AC 44921. On September 8, 2021, this court dismissed the appeal docketed under AC 44563, and further ordered, sua sponte, that all future filings be made Docket No. AC 44921.

On appeal, TigerPress claims that the judgment in favor of the third-party defendants "should be vacated and the order granting the motion to strike reversed." TigerPress argues that it alleged "an identical duty owed to [GHP] by [Robinson and LaValla] that GHP alleges [TigerPress] owes to GHP." We are not persuaded.

We first set forth the applicable standard of review. "Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling . . . is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Although [w]e assume the truth of both the specific factual allegations and any facts fairly provable thereunder . . . [a motion to strike] . . . does not admit legal conclusions or the truth or accuracy of

opinions stated in the pleadings. . . . A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged. Furthermore, [t]he interpretation of pleadings is always a question of law for the court and . . . our interpretation of the pleadings therefore is plenary." (Citations omitted; internal quotation marks omitted.) *Desmond* v. *Yale-New Haven Hospital, Inc.*, 212 Conn. App. 274, 284, 275 A.3d 735, cert. denied, 343 Conn. 931, 276 A.3d 433 (2022).

"[W]e have long eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleadings with reference to the general theory upon which it proceeded, and to substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension. . . . [E]ssential allegations may not be supplied by conjecture or remote implication . . . ." (Internal quotation marks omitted.) *Chicago Title Ins. Co.* v. *Accurate Title Searches, Inc.*, supra, 173 Conn. App. 479.

Having set forth our standard of review, we turn to the governing legal principles that are relevant to our resolution of this appeal. "Indemnification involves a claim for reimbursement in full from one on whom a primary responsibility is claimed to rest, while apportionment, sometimes called contribution, involves a claim for reimbursement of a share of a payment necessarily made by the claimant which equitably ought to

be paid in part by others. . . . In an action for indemnity . . . one tortfeasor seeks to impose total liability upon another." (Citation omitted; internal quotation marks omitted.) *Valente* v. *Securitas Security Services, USA, Inc.*, 152 Conn. App. 196, 203, 96 A.3d 1275 (2014).

"In the absence of an express contract for indemnification or statutory provisions authorizing actions for indemnification . . . a party may nonetheless assert an implied right to indemnification as a measure of restitution. . . . Where a party seeks restitution in the form of common-law indemnification, several authorities agree that the party seeking indemnity and the party from whom indemnification is sought must be considered jointly and severally liable for the loss incurred by the putative indemnitee. See 42 C.J.S. [98, Indemnity § 2 (2007)] ([i]ndemnity applies only where there is an *identical duty* owed by one and discharged by another); see also id., § 33, p. 149 ([a] cause of action for implied indemnification requires a showing that the plaintiff and the defendant owed a duty to a third party, and that the plaintiff discharged the duty which, as between the plaintiff and the defendant, should have been discharged by the defendant); 41 Am. Jur. 2d [383, Indemnity § 1 (2015)] ([i]ndemnity requires that a common duty be mutually owed to a third party); 1 Restatement (Third), Restitution and Unjust Enrichment, § 23, comment (d) (2011) (A claim to indemnity or contribution arises when the claimant has discharged all or part of a joint obligation. A claim under this section is readily distinguishable, therefore, from the similar claim that arises when A and B owe independent duties to a third party C; or when A, acting with adequate justification, renders a performance to C for which B would have been liable to C directly. . . . The restitution claim that arises from such transactions is . . . more often referred to as a claim to equitable subrogation.). The consensus expressed by these authorities

fully aligns with our jurisprudence concerning claims for common-law indemnification." (Citations omitted; emphasis added; internal quotation marks omitted.) *Chicago Title Ins. Co.* v. *Accurate Title Searches, Inc.*, supra, 173 Conn. App. 480–81.

Even if we assume, without deciding, that there is a common-law action for indemnification based upon intentional torts,[10] TigerPress' argument that its revised third-party complaint alleged an identical duty owed by it, Robinson, and LaValla to GHP warrants little discussion. In essence, the revised third-party complaint asserts that TigerPress is entitled to indemnification for TigerPress' use of GHP's stolen confidential information because Robinson and LaValla did not undertake reasonable efforts to prevent Hughes from stealing

---

[10] Claims for indemnification typically arise in cases in which the defendant is alleged to have acted negligently. See *Chicago Title Ins. Co.* v. *Accurate Title Searches, Inc.*, supra, 173 Conn. App. 485. In the present case, GHP did not allege, in its amended complaint, a cause of action for negligence against Hughes or TigerPress. Rather, GHP alleged that Hughes and TigerPress were liable for various intentional torts. Although there is no controlling appellate authority in Connecticut, the majority of our Superior Courts have held that a party cannot seek indemnification for intentional torts. See, e.g., *Peterson* v. *Hume*, Superior Court, judicial district of Hartford, Docket No. CV-11-5035394-S (March 30, 2015); *Wood* v. *Club, LLC*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-13-6016946-S (November 29, 2013) (57 Conn. L. Rptr. 238, 240); *Martel* v. *Burkamp*, Docket No. CV-H7684, 2009 WL 2243768, *2 (Conn. Super. July 23, 2009); *Starview Ventures Ltd., LLC* v. *Acadia, Ins.*, Superior Court, judicial district of New Haven, Docket No. CV-06-5003463-S (September 9, 2008) (46 Conn. L. Rptr. 342, 345). In *Martel*, the court reasoned that "the denial of indemnification claims where the only allegation against the claimant is premised on intentional misconduct serves to discourage such misconduct and is consistent with sound public policy." *Martel* v. *Burkamp*, supra, 2009 WL 2243768, *2. Moreover, as one Superior Court judge has observed, "plaintiffs cannot assert a common-law indemnity claim by merely attaching a negligence label to allegations for which negligence does not apply." *Maxwell* v. *Bozelko*, Docket No. CV-11-6006411S, 2017 WL 3251294, *4 (Conn. Super. June 30, 2017). Because GHP has not argued that TigerPress' indemnification claim fails on the basis that it seeks indemnification for its alleged intentional torts, we assume without deciding that such an indemnification claim is permissible if the duties owed by the defendant and alleged indemnitor are identical.

GHP's confidential information. To the extent that Robinson and LaValla owe GHP a fiduciary duty to protect its confidential information, that duty is entirely different from Hughes' duty not to steal GHP's confidential information, and TigerPress' duty not to use that confidential information once it became aware that such information had been stolen.

Accordingly, we conclude that the trial court properly granted the third-party defendants' motion to strike.

The judgment is affirmed.

In this opinion the other judges concurred.